(116 P.3d 747)
No. 92,779

STATE OF KANSAS, *Appellant*, v. WILLIAM N. HANEY, *Appellee*.

Opinion filed
August 5, 2005.

*Brenda J. Clary* and *Bethany C. Daniels*, assistant district attorneys, *Christine E. Kenney*, district attorney, and *Phill Kline*, attorney general, for appellant.

*Kathleen Ambrosio* and *John J. Ambrosio*, of John J. Ambrosio, Chartered, of Topeka, for appellee.

Before RULON, C.J., HILL and CAPLINGER, JJ.

RULON, C.J.: The State of Kansas appeals the imposition of a substantial downward durational and dispositional departure sentence imposed upon defendant William N. Haney for his conviction for rape. We reverse and remand for further proceedings.

The defendant was charged with statutory rape of a 13-year-old girl, S.S., in violation of K.S.A. 2004 Supp. 21-3502(a)(2). The State, for some unknown reason, has failed to include a transcript of the trial within the record on appeal. Consequently, the underlying facts of the offense are rather vague. We are at a loss to understand what prompted the State not to furnish this court with a trial transcript.

On June 14, 2003, the victim was in the company of four young men, one of whom was Haney. Prior to the rape of the victim, the victim became so intoxicated that the young men believed she might have alcohol poisoning and began to drive her to the hospital. We understand, however, that the decision was made not to admit the victim into the hospital, and the group returned to the apartment of a codefendant, D.J., a 17-year-old. The victim was so intoxicated that the defendant carried the victim up the stairs to the apartment.

Inside the apartment, the defendant took off the victim's clothes. The four young men requested to have sex with the 13-year-old victim. As we understand the facts, the victim stated she did not specifically agree to have sex, but she requested the young men use a condom if they were going to have sex with her. Each of the four young men engaged in sexual intercourse with the victim. D.J. had sex with the 13-year-old victim twice.

The codefendants were prosecuted separately. D.J. was offered a plea agreement and was tried as a juvenile. Haney and at least one of the other codefendants were tried as adults. A jury convicted Haney of statutory rape, and he eventually filed a motion for a downward durational and dispositional departure sentence. Haney contended a departure was warranted based upon the following

factors: (1) he had no prior criminal history; (2) he was just over 18 years old; (3) he possessed no psychological attributes consistent with persistent sex offenders; (4) his judgment was impaired by attention deficit hyperactivity disorder (ADHD); (5) his judgment was impaired by a history of head injuries; (6) his judgment was impaired by consumption of alcohol, which was the result of escalating alcohol abuse; (7) because of these mental obstacles, he was easily swayed by his peers; (8) he demonstrated remorse for his conduct; (9) there was no evidence of forced intercourse; (10) the relative age of the victim and her willing participation in the sexual intercourse; and (11) the Kansas Sentencing Guidelines Act (KSGA) purpose of promoting rehabilitation for nonviolent offenders.

After a hearing, the sentencing court granted the departure motion, ordering the defendant to serve a 60-month probation with an underlying sentence of 30 months. The presumptive guidelines sentence was 147 to 165 months. The reasons for the departure cited by the district court involved (a) the relative sentences of the codefendants in relation to each defendant's relative culpability; (b) the degree of harm or loss associated with this particular crime; (c) the willing participation of the victim in the criminal conduct; and (d) the defendant's receptiveness to rehabilitation.

## The Departure Sentence

Under K.S.A. 21-4721(a), the State appeals the district court's dispositional and durational downward sentencing departure. As we understand the facts, the defendant has violated the conditions of his probation and is currently incarcerated. Consequently, our consideration of the State's appeal is limited to the basis and extent of the durational departure sentence.

When enacting the Kansas Sentencing Guidelines Act (KSGA), the legislature determined the presumptive sentence, indicated by the guidelines grid which was formulated according to the severity level of the crime of conviction and the criminal history score of the offender. This sentence should be imposed by the sentencing court unless the court finds substantial and compelling reasons to

depart. K.S.A. 2004 Supp. 21-4716(a); see *State v. Murphy*, 270 Kan. 804, 806, 19 P.3d 80 (2001).

When reviewing a sentencing departure, an appellate court must address two questions. First, are the district court's articulated reasons for departing from the presumptive sentence supported by substantial competent evidence? Second, is each stated reason for a departure substantial and compelling as a matter of law? See *Murphy*, 270 Kan. at 806. In reviewing a sentencing departure, this court considers only those factors articulated by the district court at sentencing. See K.S.A. 2004 Supp. 21-4716(a); *State v. Hawes*, 22 Kan. App. 2d 837, 839, 923 P.2d 1064 (1996) (citing *State v. Gideon*, 257 Kan. 591, Syl. ¶ 21, 894 P.2d 850 [1995]). Each factor cited by the district court does not need to provide a substantial and compelling basis to depart so long as one or more constitutes such a basis for departure. See *State v. Minor*, 268 Kan. 292, 311, 997 P.2d 648 (2000).

Although Haney claims the sentencing court relied upon at least 11 factors to support a downward departure in this case, in some instances he confuses departure factors with the evidence used to support such factors. Many of the defendant's so-called departure factors involve factual allegations which essentially support a single departure factor.

### (a) comparison of codefendants

In sentencing Haney, the district court placed considerable weight upon the apparent disparity between the sole juvenile codefendant's sentence and the presumptive sentence for Haney's conviction, in light of each codefendant's relative culpability. The court noted the juvenile codefendant was nearly 18 years old and the primary instigator of the events culminating in the sexual intercourse with the 13-year-old victim by each of the young men. The juvenile codefendant had provided the alcohol to the victim and had engaged in two separate acts of intercourse with the victim. Yet, while the 18-year-old codefendants were tried as adults, the juvenile codefendant was offered a plea agreement in which the State dismissed one rape charge and the charge of furnishing alcohol to a minor. The State tried D.J. as a juvenile, and the juvenile

court imposed a sanction of 30 months in a juvenile detention facility.

Relying upon *State v. Bailey*, 251 Kan. 527, 834 P.2d 1353 (1992); *State v. Goering*, 225 Kan. 755, 594 P.2d 194 (1979); and *Cochrane v. State*, 4 Kan. App. 2d 721, 610 P.2d 649 (1980), the district court reasoned that the relative culpability of the codefendants and the juvenile codefendant's lesser sentence provided a substantial and compelling basis to depart from the presumptive sentence when sentencing Haney.

In attempting to review the district court's factual findings for substantial competent evidence, this court is severely hampered by the woefully inadequate record on appeal. While there is nothing within this record to support the sentencing court's findings, neither is there contrary evidence. The sentencing court specifically stated that it had considered the trial evidence and statements made during the sentencing hearings, along with the pleadings, motions, and letters filed in the case, before ruling on Haney's departure motion. Because the State is now complaining of the sentencing court's action, the State bears the burden of providing this court with a record sufficient to establish reversible error. The State may not fail to include a substantial part of the record and then claim that the district court's findings are unsupported. Without an adequate record, this court must presume that the district court's findings are properly supported. See Rule 3.03(a) (2004 Kan. Ct. R. Annot. 22); *State v. Lumley*, 25 Kan. App. 2d 366, 371, 963 P.2d 1238, *aff'd* 267 Kan. 4, 977 P.2d 914 (1999).

Presuming substantial competent evidence to support the district court's findings, though, does not foreclose this court's review of a sentencing departure. This court possesses unlimited review of a sentencing court's reliance upon any given departure factor as a legally sufficient reason to depart from the presumptive sentence. See *State v. Favela*, 259 Kan. 215, 232-33, 911 P.2d 792 (1996). In addressing this question, we note that nonstatutory departure factors are subject to greater scrutiny than those factors enumerated within K.S.A. 2004 Supp. 21-4716(c)(1). See *Murphy*, 270 Kan. at 807.

The sentencing court perceived Haney's conduct to be less culpable than the conduct of the juvenile codefendant and, therefore, found Haney should not receive a sentence greater than the sentence imposed on the juvenile codefendant. (The district court presumably reasoned that the juvenile codefendant possessed greater culpability because he took the victim to his apartment, plied her with alcohol, and engaged in sexual intercourse with her on two separate occasions.)

Although K.S.A. 2004 Supp. 21-4716(c)(1)(B) permits a district court to consider an offender's lesser or passive role in the crime, we are convinced there is nothing passive about this Haney's criminal conduct. Haney knew the victim was 13 years old; he knew the victim was intoxicated to the extent of potentially needing medical assistance; yet, Haney took advantage of the opportunity for his own sexual gratification. No one compelled Haney to engage in sex with an intoxicated 13-year-old. That unfortunate decision and, therefore, the responsibility belonged entirely to each individual codefendant who engaged in sexual intercourse with the victim. The juvenile codefendant is not culpable for the conduct for which Haney was charged and convicted.

Arguably, the only apparent motivating influence supporting the sentencing court's comparison of the codefendants here is the disparity between the sanction imposed on the juvenile codefendant and the presumptive sanction for each of the adult codefendants, who were admittedly no more culpable than the juvenile codefendant. The State's flimsy response to the sentencing court's reliance upon this disparity is a declaration that the prosecutors who handled each of the cases communicated with one another to ensure relative equality among the codefendants. This weak statement does nothing to cast doubt upon the sentencing court's reasoning. Not only is this declaration not tied to any support within the record but, even if the assertion is accepted as true, it does not explain the obvious disparity in presumptive sentences and does not answer the pertinent question on appeal, which is whether such a sentencing disparity can form a substantial and compelling reason to depart from a presumptive sentence.

Lack of equity in sentencing among codefendants is not a mitigating factor listed in K.S.A. 2004 Supp. 21-4716(c)(1) and is, therefore, subject to greater scrutiny. See *Murphy*, 270 Kan. at 807. In *Bailey*, our Supreme Court held:

"[T]he trial judge is not bound to sentence the defendant in [a] case to the same or a lesser sentence than that given his [or her] codefendant. The trial court, however, must consider the sentence given the codefendant and, if a longer sentence is given, the reason for doing so should be set forth on the record." 251 Kan. at 531.

While this statement may provide some meager support for the district court's reasoning, *Bailey* is distinguishable from the present case on at least two material points. First, *Bailey* involved indeterminate sentencing before the enactment of the KSGA. Second, the defendants in *Bailey* were both adults. Here, the district court attempted to reconcile the sentence imposed upon a juvenile with that imposed upon an adult.

One of the motivating considerations for the enactment of the KSGA was to impose similar sanctions upon similarly situated defendants. This objective was implemented by imposing presumptive guidelines sentences based upon a criminal defendant's criminal history score and the severity level of the crime committed. The legislature further provided that a sentencing court could deviate from the presumptive sentence only after noting substantial and compelling characteristics of the crime or the condition of the defendant which removed the offense from the normal crime of its type. See K.S.A. 2004 Supp. 21-4716(a). Because the legislature has taken into consideration equity in sentencing among similarly situated defendants in the guidelines sentencing grids, the persuasiveness of the preguidelines cases cited by the district court is diminished severely.

The relevance of the cases cited by the district court is diminished further by reason of the status of the codefendants involved in this case. The legislature has denominated a legal distinction between Haney and D.J., the juvenile offender. Because of his age, D.J. is legally classified as a juvenile, while Haney has passed his 18th birthday and is legally classified as an adult. In *State v. Green*, 218 Kan. 438, 442, 544 P.2d 356 (1975), our Supreme Court up-

held a juvenile classification based on age against constitutional attack on the basis of equal protection.

"No valid challenge can be made because the Kansas Legislature could, in the exercise of its wisdom, withhold the protection of the doctrine of *parens patriae* from all juveniles exceeding fifteen years of age. What the Legislature may do absolutely it may do conditionally, providing the conditions prescribed are applicable in like manner to every child in the class affected." 218 Kan. at 442.

More recently, the United States Supreme Court tacitly approved the seemingly arbitrary line drawn between juveniles and adults at age 18 in holding that the application of capital punishment to juveniles (defined by the age of 18) violated the constitutional prohibition against cruel and unusual punishment. The *Roper* Court noted the cultural acceptance of 18-year-olds as adults and recognized that scientific and sociological studies have demonstrated a marked difference, generally, in the maturity, sense of responsibility, susceptibility to negative influences or social pressures, and lack of independent character between people under the age of 18 and those who are 18 years of age or older. See *Roper v. Simmons*, 543 U.S. 551, 569-70, 161 L. Ed. 2d 1, 125 S. Ct. 1183 (2005).

The delineation between juveniles and adults for purposes of prosecution and punishment is a public policy determination reserved to the legislative branch of government, except where constitutional principles apply. The Kansas Legislature has deemed it proper to hold persons under the age of 18 *less* accountable for their criminal conduct than those who have attained the age of 18. Consequently, the legislature has prescribed lesser penalties for those who commit serious offenses as juveniles. While the legislature has provided the means to treat specified juvenile offenders as adults for purposes of prosecution and punishment, the legislature has not similarly chosen to provide for treatment of certain adults as juveniles. See K.S.A. 38-1636. Because the legislature has not deemed appropriate the consideration of adults as juveniles for purposes of prosecution and sentencing, the sentencing court's attempt to circumvent the legislature's policy decisions by so regarding the adult codefendants' offenses is inappropriate. See *State v. Heath*, 21 Kan. App. 2d 410, 418, 901 P.2d 29 (1995) (holding that

disagreement with the classification of a crime by the legislature is not a substantial and compelling reason to depart from the presumptive sentence).

However, in *Roper*, the United States Supreme Court did recognize that "[t]he qualities that distinguish juveniles from adults do not disappear when an individual turns 18." 543 U.S. at 574. The Kansas Legislature has likewise recognized that some adult defendants do not possess a normal capacity to reason, which should be considered as mitigation in sentencing, even though such diminished capacity does not provide a defense to the crime of conviction. See K.S.A. 2004 Supp. 21-4716(c)(1)(C). Similarly, our Supreme Court has expanded the scope of this mitigating factor to include a criminal defendant's immaturity and impaired judgment due to age. See *Favela*, 259 Kan. at 237-38. Consequently, to the extent that the sentencing court relied upon this defendant's relative age, immaturity, or impaired judgment to justify a departure, the court's reasoning would provide a substantial and compelling reason to depart from the presumptive guidelines sentence.

The problem here, however, is that any proper consideration of Haney's age, immaturity, or impaired judgment was inextricably involved with the impermissible consideration of the juvenile codefendant's sentence. The district court should have considered Haney's diminished capacity, if any, only to the extent of his relative age, immaturity, and impaired judgment as distinguished from the average *adult* offender.

In this case, the sentencing court was presented at sentencing with the testimony of Haney's psychologist, who opined that Haney's history of head injuries, abuse of alcohol, and attention deficit hyperactivity disorder impaired his judgment significantly when faced with corruptive social influences, as in this case. But, the sentencing court did not utilize these factors to compare Haney's conduct with the conduct of the average adult who commits statutory rape to establish Haney's diminished capacity as a basis for departing. Rather, the sentencing court based its sentencing determination solely upon Haney's age relative to the age of the juvenile codefendant to compare the presumptive sentence for Ha-

ney with the sentence imposed upon the juvenile codefendant. This was error.

### (b) degree of harm or loss

The sentencing court further based Haney's downward departure sentence on a finding that the degree of harm or loss to the 13-year-old victim as a result of the sexual intercourse with Haney was less than statutory rape typically causes. In particular, the court noted the relative ages of the victim and the defendant and the absence of physical force or harm in the perpetration of the act.

While the age of a criminal defendant may be considered in relation to his or her ability to make good judgments, see *Murphy*, 270 Kan. at 807; *Favela*, 259 Kan. at 235, there are no Kansas cases holding the relative age of a child victim may be a mitigating factor. To the extent that a young adult exercises poor judgment due to his or her young age and lack of experience, an even younger victim cannot be expected to exercise greater judgment. Indeed, with respect to children under the age of 14, society presumes the child cannot exercise any judgment regarding consent to sexual activity. The legislature has consistently promulgated this public policy throughout the criminal statutes proscribing sex offenses. See K.S.A. 2004 Supp. 21-3502(a)(2) (rape); K.S.A. 21-3504(a)(1) (aggravated indecent liberties with a child); K.S.A. 21-3506(a)(1) and (a)(2) (aggravated criminal sodomy); K.S.A. 21-3511 (aggravated indecent solicitation of a child); K.S.A. 2004 Supp. 21-3522 (unlawful voluntary sexual relations).

In relying upon the relative ages of the victim and Haney, the sentencing court implies the harm to the victim is not as great because there is less disparity in age. This reasoning is totally flawed. A 13-year-old victim is no more capable of consenting, legally, to sexual activity with an 18-year-old than with a person who is 25 or 40. Furthermore, the trauma to the underage victim is potentially as great.

To the extent sexual activity is encouraged by an underage victim, the legislature has provided for mitigation. See K.S.A. 2004 Supp. 21-4716(c)(1)(A). Likewise, the legislature and the courts have considered the relative immaturity of an offender in providing

for mitigation. See K.S.A. 2004 Supp. 21-4716(c)(1)(C); *Favela,* 259 Kan. at 237-38. Any other reliance upon the relative ages of a victim and a defendant is improper and does not form a substantial and compelling basis to depart from a presumptive sentence.

As support for this mitigating factor, the district court was substantially influenced by the sanction imposed for unlawful voluntary sexual relations, K.S.A. 2004 Supp. 21-3522(a)(1). The commission of that offense, defined as voluntary sexual intercourse between a boy or girl who is between 14 and 16 years of age and a member of the opposite sex who is under the age of 19 and less than 4 years older than the victim, is a severity level 8 felony. The sentencing court reasoned that, if the victim in this case had been 9 months older at the time of the offense, Haney would be facing a presumptive sentence of 7-9 months.

Under the district court's reasoning, if the victim had been 9 months older, she could have legally consented to the sexual intercourse, and the defendants could not have been convicted of rape. Using the same reasoning, Haney would have been guilty of, at least, aggravated indecent liberties with a child, a severity level 3 felony. See K.S.A. 21-3504(a)(1). Haney was just over 5 months from his 19th birthday on the date of the offense. If he were 9 months older, he would be 19 years old and could not qualify for the protection of K.S.A. 2004 Supp. 21-3522(a)(1). Moreover, the difference in age between Haney and the victim is more than 4 years, which would further disqualify him from the protection of K.S.A. 2004 Supp. 21-3522(a)(1).

As a result, the district court's finding that the harm or loss occasioned by the rape in this case was less significant than a typical rape of its kind because of the relative ages of the victim and the defendant was improper. Such a comparison cannot form a substantial and compelling reason to depart from the presumptive sentence established for statutory rape.

Similarly, the lack of evidence of physical force or trauma in the commission of the rape does not support a finding that the harm or loss in this case was less significant than typically occasioned by this offense. Even in rape cases in which consent is an issue, the victim does not need to demonstrate physical harm or force to

demonstrate an absence of consent. In any rape case, the emotional and psychological trauma to the victim justifies a severe penalty.

The sentencing court made no finding about the emotional and psychological trauma to the victim caused by Haney's actions. Instead, the sentencing court found that statutory rape may encompass a wide range of trauma and harm. In *Minor*, the State appealed a downward sentencing departure in which the district court had relied, in part, upon the supposed lack of harm or loss to the victim of aggravated criminal sodomy as a mitigating factor. Our Supreme Court held it was improper to depart from a presumptive sentence on this basis when the record was silent about what harm constitutes the typical harm or loss for this particular type of offense and there was no showing how the facts in the case made the harm less significant than in the normal case. 268 Kan. at 312.

The reasoning in *Minor* controls this case as well. There is nothing within the record, other than the sentencing court's conclusory comments, to indicate the harm suffered by this particular victim was less significant than the harm normally associated with statutory rape. As in *Minor*, we disapprove the sentencing court's use of this departure factor.

### (c) participation of the victim

The sentencing court further relied upon the victim's role in the events leading up to the statutory rape as support for the departure from the presumptive sentence. Specifically, the sentencing court noted that the victim was an experienced drinker (despite her age); the alcohol had not been furnished by Haney; there were no threats, force, or weapons involved in Haney's conduct; and the victim requested Haney to wear a condom before engaging in sex with her. The sentencing court found further evidence at trial proved the victim's complicity in sex with Haney, without further elucidation. Without a copy of the trial transcript in this record on appeal, this court cannot review the evidence supporting the district court's determination. Furthermore, in *State v. Rush*, 24 Kan. App. 2d 113, 942 P.2d 55, *rev. denied* 262 Kan. 968 (1997), this

court held that a victim's active participation in sexual conduct is not a defense to statutory rape.

Nevertheless, in *Rush* the sentencing court was presented with the victim's statement that the challenged incident was the victim's fault because she desired a relationship with the defendant and initiated the sexual intercourse for which the defendant was convicted of statutory rape. 24 Kan. App. 2d at 113-14. Relying upon an Idaho case, this court concluded the aggressive conduct of a victim leading to sexual intercourse is a substantial and compelling reason to depart from a presumptive sentence for statutory rape. 24 Kan. App. 2d at 116.

This case may be distinguished from *Rush*. Here, there is *no* evidence before this court the victim admitted that she solicited the sexual contact with Haney. The only evidence presented in this appeal indicates the contrary. Furthermore, the sentencing court's reliance upon some facts does not logically support a finding the victim was a voluntary participant in this crime. The victim's experience or inexperience with alcohol is irrelevant to determining her voluntary participation in sexual activity when the record indicates that she was clearly intoxicated at the time of, or shortly before, the offense. Likewise, the fact Haney did not furnish the alcohol consumed by the 13-year-old victim does not logically prove he did not take advantage of the victim in her intoxicated condition. The fact there is no evidence of threats, force, or weapons in the commission of the crime is relevant, but the relevance is obscured in light of the victim's totally intoxicated condition.

Nevertheless, in *Minor* several witnesses at trial presented conflicting testimony concerning the voluntariness of the victim's participation in the aggravated criminal sodomy at issue there. While the victim in *Minor* testified she was an unwilling participant, other testimony indicated the victim initiated the sexual activity. Our Supreme Court specifically approved the sentencing court's resolution of this conflicting testimony at sentencing when the court found the victim had willingly initiated the sexual contact. Because victim participation is a mitigating departure factor listed in K.S.A. 2004 Supp. 21-4716(c)(1)(A), the *Minor* court concluded the sen-

tencing court properly imposed a sentencing departure. 268 Kan. at 311.

The record in this case, as thin as it is, contains evidence supporting conflicting interpretations of the victim's participation in the sexual activity for which Haney was convicted of statutory rape. According to the sentencing transcript, alone, there was evidence that the victim was heavily intoxicated. But, there was evidence the victim was cognizant enough of Haney's intentions to request his use of a condom. In the absence of any threats or force used in the commission of the offense, such evidence arguably demonstrates the victim's willingness to engage in sexual intercourse with Haney.

Without the possibility of reviewing the trial testimony here, this court cannot state that the district court's resolution of the conflicting evidence is not supported by substantial competent evidence. See *Lumley*, 25 Kan. App. 2d at 371. Consequently, there was no error in the district court's reliance upon this statutory factor in granting Haney's motion for a downward sentencing departure.

## (d) guidelines policy considerations

The sentencing court found Haney's offense was context-specific; his judgment was eroded by his age, immaturity, and ADHD; and his background and psychological profile demonstrated that he was unlikely to pose a future threat to society. As such, after considering several of the policy rationales of the KSGA, the sentencing court found a departure was warranted.

When presented with a sentencing departure motion, a sentencing court should consider the purposes and principles under which the KSGA was enacted, including (1) the belief that prison space should be reserved for serious or violent offenders; (2) the understanding the extent of sanction for criminal conduct should be based upon the harm inflicted; (3) the desire to create uniformity in the sanctions imposed, irrespective of socioeconomic, racial, or geographic factors; (4) the need for clarity in potential sanctions for specified conduct; (5) the desire to protect the public from serious offenders; (6) the goal of rehabilitation; and (7) the need

to allocate public resources efficiently and wisely. See *Favela*, 259 Kan. at 233.

While a particular defendant's amenability to rehabilitation is not a substantial and compelling reason to depart from the presumptive guidelines sentence by itself, a sentencing court may properly consider such evidence in the totality of the circumstances in determining the appropriate penalty to be imposed for a particular offense if other factors warrant departure. See *Murphy*, 270 Kan. at 806-07. In *State v. Grady*, 258 Kan. 72, 87-88, 900 P.2d 227 (1995), our Supreme Court also approved the sentencing court's consideration of the defendant's lack of a criminal history as evidence of a lack of predisposition to commit future crimes.

Based upon the testimony of Haney's psychologist, we cannot conclude the sentencing court's consideration of Haney's likelihood to reoffend was erroneous. Evidence of a nonviolent commission of a crime and a defendant's receptiveness to rehabilitation have previously been approved as considerations in sentencing. Therefore, although each of these considerations, by itself, was insufficient to justify a departure, the sentencing court appropriately considered such in the totality of the circumstances. See *Murphy*, 270 Kan. at 806-07.

## Extent of the Departure

Based upon the findings regarding the voluntary participation of the victim and the defendant's lack of criminal history and amenability to rehabilitation, the sentencing court acted within its authority in granting a downward durational sentencing departure. See *Minor*, 268 Kan. at 311 (citing *State v. Zuck*, 21 Kan. App. 2d 597, 603-04, 904 P.2d 1005, *rev. denied* 258 Kan. 863 [1995]). In addition, the sentencing court could properly weigh the context-specific nature of the offense, Haney's risk to society, and his receptiveness to rehabilitation within the totality of the circumstances in deciding the extent of the departure.

However, the extent of a sentencing departure is also subject to review by this court. "Under an abuse of discretion standard of review, the question is if the extent of the sentencing court's durational departure is consistent with the 'enacted purposes and prin-

ciples of [the] sentencing guidelines' and 'proportionate to the severity of the crime of conviction and the offender's criminal history.' " *Favela*, 259 Kan. at 244 (quoting K.S.A. 1994 Supp. 21-4719[b][1]).

An abuse of discretion standard of review is highly deferential to the sentencing court. In order to justify a reversal, the appellate court must be prepared to declare that the sentencing court's decision was so arbitrary, fanciful, or unreasonable that no reasonable person in the position of the court would have reached a similar decision. See *State v. Young*, 277 Kan. 588, 597, 87 P.3d 308 (2004).

Here, the sentencing court departed significantly from a standard presumptive sentence of 155 months, down to 30 months. The underlying sentence imposed upon Haney is approximately equivalent to a severity level 5 person felony, as defined by the KSGA in 2002. See K.S.A. 2002 Supp. 21-4704. Offenses carrying similar penalties when committed by persons with similar criminal histories include indecent liberties with a child, K.S.A. 21-3503; sexual exploitation of a child, K.S.A. 2004 Supp. 21-3516; and aggravated sexual battery, K.S.A. 21-3518.

In *Favela*, our Supreme Court reviewed the extent of a departure in an attempted murder case. The sentencing court had reduced the presumptive attempted murder sentence of 51 to 59 months to 14 months, the equivalent of a sentence for aggravated assault. 259 Kan. at 244. In affirming the extent of the departure, the *Favela* court rejected the State's argument that no reasonable person would impose a sentence for aggravated assault for a conviction of attempted murder.

At first glance, *Favela* arguably controls here. However, *Favela* is distinguishable. Favela had witnessed his brother being stabbed by Willard LaGrange. After taking his brother to the hospital, Favela returned to the scene of the stabbing and brandished a gun, threatening to kill LaGrange. However, Favela did not specifically point his gun at any person. Eventually, Favela surrendered to the police without firing a shot. 259 Kan. at 216-17. In essence, the crime completed by Favela was equivalent to aggravated assault, even though his actions also supported a conviction for attempted

murder. Under these circumstances and after considering the mitigating factors in favor of departing from the presumptive sentence, our Supreme Court concluded it was reasonable to reduce Favela's sentence to the equivalent of aggravated assault.

In contrast, Haney was not charged with and convicted of *an attempted crime*. Based upon the victim's voluntary participation, the defendant would still have been guilty of committing aggravated indecent liberties with a child, if the victim had legally been capable of consenting to sexual intercourse. Such an offense is a severity level 3 person felony, which in June 2003 carried a presumptive prison sentence of 55-59-61 months. See K.S.A. 21-3504(a)(1); K.S.A. 2002 Supp. 21-4704. Yet, here, the sentencing court departed even further.

While there are mitigating considerations, including the low probability Haney would repeat a similar offense in the future and his receptiveness to rehabilitation, a downward sentencing departure to the equivalent of a level 5 person felony is disproportionate to the severity of the crime committed in this case (even considering the voluntary participation of the victim). We conclude no reasonable person would have departed from the presumptive sentence to such an extent when considering only the valid departure factors stated herein. Consequently, the departure was excessive under the factual circumstances presented here. This durational departure constituted an abuse of judicial discretion. The sentence is vacated and the case remanded for resentencing proportionate to the act committed.

### Partiality, Prejudice, Oppression, or Corrupt Motive

The State further contends the sentencing court's departure sentence was improperly motivated by partiality, prejudice, oppression, or corrupt motive. The State's brief on this issue is entirely conclusory. An issue raised but not argued is generally deemed abandoned. See *State v. Hunt*, 275 Kan. 811, 821, 69 P.3d 571 (2003).

In *State v. Sampsel*, 268 Kan. 264, 997 P.2d 664 (2000), our Supreme Court considered a similar claim for improper motive behind a substantial downward departure in a statutory rape case.

During the trial, evidence was presented that the victim was actively involved in promoting the sexual conduct of the defendant. 268 Kan. at 274.

The *Sampsel* court admonished the sentencing court for improper comments but refused to declare such comments were indicative of an improper motive or partiality in sentencing. 268 Kan. at 283. If the sentencing court's comments in *Sampsel* cannot be regarded as evidence of prejudice or partiality, there is nothing within this case to support such a conclusion. As a result, this issue must fail.

We vacate the sentence and remand to the district court for resentencing proportionate to the severity of the offense committed.