NOT DESIGNATED FOR PUBLICATION

No. 120,808

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

TAYLOR K. LUKONE,
*Appellee*.


MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed March 13, 2020. Sentence vacated and case remanded with directions.

*Andrew R. Davidson*, senior assistant district attorney, *Keith Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Shannon S. Crane*, of Hutchinson, for appellee.


Before HILL, P.J., GREEN and WARNER, JJ.


PER CURIAM: Taylor K. Lukone pleaded either guilty or no contest to a lesser charge of reckless second-degree murder of Jose Lopez. Lopez was fatally injured when Lukone used his car to run Lopez over from behind while he was riding his bicycle. The force of the collision knocked Lopez out of his shoes and caused catastrophic and ultimately fatal injuries to him. Lopez was left bleeding along with his mangled bicycle in the street. Lukone also pleaded either guilty or no contest to the charge of failing to stop at an accident reasonably known to result in death of a person and to the charge of interfering with the duties of a law enforcement officer. The presumptive sentencing

1

range for Lukone's conviction for the reckless second-degree murder included prison terms of the following: (1) aggravated—123 months; (2) standard—117 months; (3) mitigated—109 months.

The trial court granted a downward durational departure on its own motion and sentenced Lukone to 24 months' imprisonment. The State challenges the extent of the trial court's downward durational departure, arguing that the court's stated reasons for the departure were not substantial and compelling. We agree. Because the trial court exercised its discretion outside the authority of the revised Kansas Sentencing Guidelines Act (KSGA) when it granted the downward durational departure to 24 months' imprisonment, we conclude that this constituted an abuse of discretion. So, we vacate the durational departure sentence in the reckless second-degree murder conviction and remand to the trial court for resentencing.

On September 21, 2017, around 1 a.m., Jose Lopez was riding his bicycle when Lukone drove past him. Upon seeing Lopez, Lukone made a U-turn, accelerated his car, and crashed into Lopez from behind with his car. When he collided into Lopez, Lukone stated: "That's what you get for hitting my mom." Lukone then turned down a nearby street and parked his car. At this point, Lukone and his passenger, Darion Maxey, ran to Lukone's apartment and started playing video games. Lukone called his mother and told her what he had done.

Shortly afterwards, the police responded to an emergency call about Lopez' injuries. When they arrived, they saw that Lopez could hardly breathe. They saw broken bicycle parts strewed about his body. They also saw broken car parts next to his body. An emergency vehicle took Lopez to a hospital, but he later died from his injuries.

Later that morning, the police located Lukone's heavily damaged car; a license plate search identified Lukone as the owner of the car. A few hours later, both Lukone

and Maxey reported to the police that someone had stolen Lukone's car. Several days later, on September 24, 2017, Lukone voluntarily contacted the police and confessed to intentionally running over Lopez. Lukone told the police that "he wanted to hurt [Lopez] because of what he'd done to other people . . . ."

The State charged Lukone with first-degree murder, failure to stop at an accident reasonably known to result in death, and interference with a law enforcement officer. Eventually, Lukone and the State entered into a plea agreement. Under the agreement, the State would amend Lukone's first-degree murder charge to reckless second-degree murder. Lukone's other charges would remain the same. The parties also agreed to jointly recommend that Lukone serve 123 months' imprisonment—the aggravated presumptive prison sentence—for the reckless second-degree murder conviction. The parties were free to argue whether Lukone's sentences should run consecutively or concurrently.

Lukone entered a plea consistent with this plea agreement. Before sentencing, however, the trial court filed a notice of intent to depart from Lukone's presumptive prison sentence.

At sentencing, the State asked the trial court not to depart, arguing that no substantial and compelling reasons merited a downward durational departure in Lukone's case. The State argued that the trial court should follow the sentencing recommendations in Lukone's plea agreement and also run Lukone's sentences consecutively because Lukone made a "calculated" and "vengeful[]" decision that resulted in Lopez' death. Lukone responded that he was "not ask[ing] for a departure based upon [the plea] agreement." He instead asked that the court sentence him according to his plea agreement and run his sentences concurrently.

Nevertheless, the trial court announced that it was departing downward from Lukone's presumptive sentence, sentencing him to a controlling term of 24 months'

imprisonment followed by 36 months' postrelease supervision. In support of this sentence, the trial court stated:

> "I, in reading the presentence [investigation] report, became aware, first of all that Mr. Lukone had turned 18, I believe less than two months prior to this incident. Which in Kansas 18 years of age is the demarcation between being a child and being an adult. So Mr. Lukone was an adult by Kansas law but certainly just barely. I also looked at Mr. Lukone's criminal history, which is I believe there was a juvenile conviction for consumption of alcohol and the—a minimal criminal history; a possession of drug paraphernalia. Considering those factors, primarily Mr. Lukone's young age and also considering that Mr. Lukone did accept responsibility, I—I, of course, was not involved in the days after and even up to the plea agreement. But Mr. Lukone accepted a plea. This case did not go to trial. He has even today, of course, accepted responsibility. So I find all of that weighs in favor of departing from the presumptive term of imprisonment, which will still be significant to this young man and my term for second degree murder is 24 months. The second sentence will be the standard sentence of 32 months, which will run concurrent. And actually I need to modify that sentence down to 24 months also and the third offense will carry the standard sentence of six months which will run concurrent. There is a post release period of three years in this case. So along with the prison term, Mr. Lukone will be on strict supervision for three years. And I will impose the court costs of $202.00, the DNA fee of $200.00 and the restitution amount of $25,000.00."

The State timely appealed the trial court's downward durational departure.

*Did the Trial Court Err by Giving Lukone a Downward Durational Departure?*

On appeal, the State argues that the trial court's stated reasons for giving Lukone a downward durational departure—his lack of criminal history, his youth, and his acceptance of responsibility—were not substantial and compelling. The State first challenges whether the trial court could even rely on its stated reasons for Lukone's durational departure. Then, notwithstanding the appropriateness of the trial court's stated reasons for the departure, the State challenges if those reasons warranted a downward

4

durational departure given the severity of Lukone's crimes:  reckless second-degree murder, failure to stop at an accident reasonably known to result in death, and interference with a law enforcement officer. As a result, the State asks us to vacate Lukone's controlling 24-month prison sentence and remand to the trial court for resentencing in compliance with the KSGA.

Lukone counters that the trial court's stated reasons for his departure sentence were substantial and compelling. Lukone emphasizes that in prior cases, Kansas appellate courts have determined that a defendant's acceptance of responsibility and youth may constitute substantial and compelling reasons to depart from the defendant's presumptive sentence under the KSGA grid.

When the extent of a durational departure is challenged, an "appellate standard of review is abuse of discretion, measuring whether the departure is consistent with the purposes of the guidelines and proportionate to the crime severity and the defendant's criminal history." *State v. Spencer*, 291 Kan. 796, 807-08, 248 P.3d 256 (2011).

We are guided in our inquiry concerning the application of the abuse of discretion standard by our Supreme Court decision in *Dragon v. Vanguard Industries, Inc.*, 277 Kan. 776, 779, 89 P.3d 908 (2004). There our Supreme Court stated:

> "In general, when a discretionary decision is made 'within the legal standards and takes the proper factors into account in the proper way, the [trial court's] decision is protected even if not wise.' However, '[a]buse is found when the trial court has gone outside the framework of legal standards or statutory limitations, or when it fails to properly consider the factors on that issue given by the higher courts to guide the discretionary determination.' [Citations omitted.]"

5

Here, the framework of the legal standards or the statutory limitations placed on the trial court in this appeal is the KSGA. Thus, if the trial court goes outside the legal standards or the statutory limitations of the KSGA, it has abused its discretion.

K.S.A. 2017 Supp. 21-6815(c)(1) contains a nonexclusive list of mitigating factors that a trial court may consider when granting a departure. Because K.S.A. 2017 Supp. 21-6815(c)(1) contains a nonexclusive list of mitigating factors, trial courts may consider other nonstatutory factors when granting a departure. Nevertheless, these nonstatutory factors must "'be consistent with the intent and purposes of the sentencing guidelines.' [Citations omitted.]" *State v. Hines*, 296 Kan. 608, 616, 294 P.3d 270 (2013).

Moreover, to constitute a mitigating factor, the trial court's reason for the departure must be "a substantial and compelling reason [to] justify[] an exceptional sentence . . . outside . . . the standard sentencing range for a crime." K.S.A. 2017 Supp. 21-6803(n). "In order for a mitigating factor to be substantial, the reason must be real, not imagined, and of substance, not ephemeral." *Hines*, 296 Kan. 608, Syl. ¶ 5. On the other hand, "[i]n order to be compelling, the mitigating factor must be one which forces the court, by the facts of the case, to abandon the status quo and to venture beyond the sentence that it would ordinarily impose." 296 Kan. 608, Syl. ¶ 5.

Here, the trial court relied exclusively on nonstatutory factors when departing from the KSGA. Nevertheless, an examination of the trial court's nonstatutory reasons for departing establishes that the reasons were not substantial and compelling or consistent with the purposes of the KSGA.

For starters, the trial court was barred as a matter of law from considering Lukone's minimal criminal history as a mitigating factor. Whether a trial court relied on legally appropriate reasons to give a defendant a departure constitutes a question of law over which we exercise de novo review. *State v. Theurer*, 50 Kan. App. 2d 1203, 1216,

337 P.3d 725 (2014). Previously, this court has held that "a defendant's criminal history cannot be used as justification for a departure sentence when the sentencing guidelines have already taken the defendant's criminal history into account in determining the presumptive sentence within the grid." *State v. Richardson*, 20 Kan. App. 2d 932, 941, 901 P.2d 1 (1995). This means that trial courts may not give a departure based on the type of crimes or number of crimes within a defendant's criminal history. See *Theurer*, 50 Kan. App. 2d at 1227.

The trial court in this case, however, stated that it would give Lukone a downward durational departure because of his "minimal criminal history," which included juvenile convictions for possession of drug paraphernalia and illegal consumption of alcohol by a minor. But in doing this, the trial court ignored that the Legislature had already credited Lukone for his minimal criminal history. Indeed, Lukone had the lowest criminal history score possible under the KSGA. He had a criminal history score of I. Under the KSGA sentencing grid, Lukone's criminal history score of I established that his presumptive prison sentence for his crime of reckless second-degree murder was 109 to 123 months' imprisonment and that his presumptive prison sentence for his crime of failure to stop at an accident reasonably known to result in death was 38 to 43 months' imprisonment. So, the trial court disregarded the statutory limitations placed on it by the KSGA when it considered Lukone's minimal criminal history as a mitigating factor to support its downward durational departure sentence.

Next, the trial court was barred as a matter of law from considering Lukone's age as a mitigating factor. In cases where our Supreme Court considered a defendant's youth as a mitigating factor, the defendant's inability to exercise judgment was key. In *State v. Lopez*, 271 Kan. 119, 140, 22 P.3d 1040 (2001), for example, Lopez argued that he was entitled to a departure because of his youth. He explained that he "had not learned to exercise good judgment[] and had not learned skills for coping with the stress . . . ." 271 Kan. at 140. Our Supreme Court rejected Lopez' argument because many young people

7

have problems exercising good judgment and coping with stress: "The immaturity referenced in the proposition is the youthful counterpart of senility, a condition in which age affects ability to exercise judgment. The immaturity referenced is not a mere disregard for the well-being of other people." 271 Kan. at 140-41.

Here, however, when finding that Lukone's young age constituted a mitigating factor entitling him to a departure, the trial court cited no evidence indicating that Lukone's youth affected his ability to exercise judgment. Instead, the trial court found that Lukone's age constituted a mitigating factor weighing in favor of a departure simply because he had turned 18 years old just 2 months before he killed Lopez. This reasoning clearly goes outside the legal framework of the legal standards set out in our Supreme Court's holding in *Lopez.*

Moreover, the trial court's reasoning contradicts the purposes of the KSGA. The Legislature has enacted both the KSGA and the revised Kansas Juvenile Justice Code (KJJC), which defines "juvenile offenders" as persons "less than 18 years of age" who have committed a criminal offense. K.S.A. 2017 Supp. 38-2302(s). Accordingly, the Legislature has decided that persons aged 18 years or older are bound by the harsher punishments enacted under the KSGA. In fact, we have previously explained that "[t]he delineation between juveniles and adults for purposes of prosecution and punishment is a public policy determination reserved to the legislative branch of government, except where constitutional principles apply." *State v. Ussery*, 34 Kan. App. 2d 250, 257, 116 P.3d 735 (2005). Thus, by giving Lukone a departure simply because he had turned 18 years old 2 months before he killed Lopez, the trial court acted outside the legislative purpose of the KSGA and the KJJC.

Next, substantial and compelling evidence does not support the trial court's finding that Lukone accepted responsibility for his crimes. When considering the factual appropriateness of the trial court's stated reason for departing, we consider if substantial

8

competent evidence supported the court's finding. *State v. Spencer*, 291 Kan. 796, 807, 248 P.3d 256 (2011). "Substantial competent evidence is that which possesses both relevance and substance and which furnishes a substantial basis in fact from which the issues can reasonably be resolved." *State v. Sharp*, 289 Kan. 72, 88, 210 P.3d 590 (2009). Appellate courts may review a defendant's statements to determine if those statements indicate that the defendant accepted responsibility when the defendant cites his or her acceptance of responsibility as a reason for upholding the trial court's downward durational departure. See *Theurer*, 50 Kan. App. 2d at 1233.

To address the absence of substantial competent evidence supporting the trial court's finding that Lukone accepted responsibility for his crimes, we first note that it is unclear whether Lukone pleaded guilty or no contest to his amended criminal charges. The State did not include the parties' plea agreement or the transcript of Lukone's plea hearing in the record on appeal. Thus, we must rely on other evidence in the record on appeal to determine if Lukone pleaded guilty or no contest to his amended crimes. Unfortunately, the evidence in the record on appeal provides conflicting answers. Lukone's sentencing hearing journal entry states that Lukone pleaded guilty to the amended crimes. But the minute's entry for Lukone's plea hearing states that Lukone pleaded no contest to the amended charges. Furthermore, both before the trial court and in its appellate brief, the State asserted that Lukone pleaded no contest to his amended crimes.

Not knowing if Lukone pleaded guilty or no contest to his crimes complicates our review because, generally, a plea of no contest creates a presumption that the defendant has not accepted responsibility for his or her crimes. See *Theurer*, 50 Kan. App. 2d at 744 (citing *State v. Case*, 289 Kan. 457, Syl. ¶ 3, 213 P.3d 429 [2009]); see also *State v. Morley*, 57 Kan. App. 2d 155, 163, 448 P.3d 1066 (2019). Even so, a review of Lukone's statements to the trial court both before his sentencing and at his sentencing hearing establishes that he did not accept responsibility for his crimes.

Before his sentencing, Lukone stated, "I understand what I did was a very serious thing. I know I should be punished *but please understand I didn't* [*mean*] *the severity or any of it.* [*I*]*f you allow me to show you I will succeed* [*at*] *any goal you set for me. I'm scared* and sorry." (Emphasis added.) Although Lukone starts his statement by acknowledging that he did something wrong and that he should be punished, he continues his statement by minimizing his behavior. That is, Lukone acknowledges that he did something wrong and he should be punished. But he follows this acknowledgment by saying he never meant the severity of his actions. For example, in his latter acknowledgement, he maintains that he never intended to kill Lopez ("I didn't [mean] the severity or any of it.") when he crashed into him with his car. Nevertheless, in his latter acknowledgment, Lukone attempts to brush aside the severity of his crimes and play down his role in causing Lopez' death by maintaining that he never intended to kill Lopez. Simply put, defendants who play down their role in the commission of their crimes have not accepted responsibility for their crimes.

Besides, the facts of this case vividly show that Lukone meant the severity of his actions. The evidence in the affidavit for Lukone's arrest, as well as the evidence presented by the State at Lukone's preliminary hearing, demonstrated that upon seeing Lopez, Lukone made a U-turn, accelerated his car, and drove straight towards Lopez from behind with his car. See *Hines*, 296 Kan. at 622-23 (reversing the trial court's downward durational departure, in part, because the defendant's intent to kill was established in the probable cause affidavit for his arrest). Additionally, in his police interview, Lukone admitted that he "wanted to hurt [Lopez] for the way he had treated other people in the past." He admitted that he sped up his car before driving over Lopez. And he admitted that he knew he had severely injured Lopez after he ran him over.

Nevertheless, in his brief, Lukone contends that we must disregard any evidence the State points to indicating that he committed an intentional crime because he was

10

convicted of reckless second-degree murder. But we have held that in the context of plea agreements, a defendant may plead to crimes that are nonexistent or hypothetical so long as the defendant was initially charged on a valid pleading, received a beneficial plea agreement, and voluntarily and knowingly entered into the plea agreement. See *McPherson v. State*, 38 Kan. App. 2d 276, 280-81, 163 P.3d 1257 (2007). Thus, the State may certainly enter an agreement to amend a defendant's charge to some lesser crime in exchange for that defendant's plea. Here, Lukone ignores that the State amended Lukone's charge of premeditated first-degree murder to reckless second-degree murder as part of his plea agreement.

Although Lukone told the trial court that he did not mean the severity of his actions, his actions of accelerating his car just before he ran over Lopez from behind underscore that he intended to severely hurt Lopez. Indeed, the force of the collision knocked Lopez out of his shoes, causing catastrophic and fatal injuries, and severely mangled the bicycle he was riding. So, Lukone's novel contention that he did not mean the severity of his actions clearly illustrates that he has not accepted responsibility for his crimes.

Regarding Lukone's statement at his sentencing hearing, Lukone told the trial court the following:

> "There's just a few things I would like to say. First off I do take responsibility for this. I'm not trying to weasel my way out of this. I know I messed up. I know that. I apologize for the families going through this; mine and the Lopez's. *There are some things I would like to argue with, but I don't know if I have a right to. But I want to. No? Okay. I just had to ask. I've not done this before. I know it seems like I'm a pretty harsh kid but honestly I've done the hardest thing. I've kept a job. Even still I will push for the future. I have a nice place for me and, and if I can't, if whatever happens, I also will do whatever it takes*." (Emphasis added.)

11

Although Lukone explicitly stated that he "t[ook] responsibility for this," he immediately followed this statement with an attempt to "argue with" "some things." The only reason why Lukone did not complete his argument is because an unknown person told Lukone not to "argue with" "some things." In totality, Lukone's statement does not support that he accepted responsibility for his crimes. Although defendants may explain their conduct during an allocution to the court, defendants who have accepted responsibility for their crimes do not "argue with" the underlying facts supporting their conviction or the severity of their crimes when making their allocution. Lukone's wish to "argue with" "some things" establishes that he wanted to contest some part of his crimes.

Moreover, Lukone's statement that he had "done the hardest thing" by "ke[eping] a job" and "push[ing] for the future" establishes a complete disconnect between Lukone's understanding of the severity of his actions and his current mental state. Lukone was clearly less concerned about Lopez' death and the effect his death had on Lopez and his family than his own ability to persevere and focus on his future. The unassailable fact is that Lukone wiped away any future Lopez and his family may have had together.

In his brief, Lukone additionally argues that his willingness to pay restitution supports that he accepted responsibility for his crimes. Yet, the trial court never asserted that Lukone's willingness to pay restitution showed that he accepted responsibility. Thus, it seems the trial court never considered Lukone's alleged willingness to pay restitution as support that he accepted responsibility. See K.S.A. 2017 Supp. 21-6815(a) (requiring the trial court to state on the record its reasons for granting a departure). Moreover, the record indicates that Lukone was not going to personally pay any restitution. Instead, his insurance providers, who were in a civil dispute with Lopez' estate and survivors, would be paying any compensation owed to Lopez' estate and survivors.

Finally, when granting a durational departure, the trial court must consider whether the departure is proportionate with the severity of the defendant's crimes. A trial

12

court's disproportionate downward durational departure constitutes an abuse of its discretion. See *Ussery*, 34 Kan. App. 2d at 266. For instance, in *Ussery*, the trial court's departure from Ussery's standard presumptive prison sentence of 155 months' imprisonment to 30 months' imprisonment for his crime of statutory rape constituted an abuse of discretion. 34 Kan. App. 2d at 265-66. We held that the trial court's reasons for granting the departure—Ussery's low probability of recidivism and receptiveness to rehabilitation—did not support the extent of the trial court's departure. In reaching this holding, we noted that statutory rape constituted a severity level 3 person felony, but the trial court sentenced Ussery as if he had committed a severity level 5 person felony. 34 Kan. App. 2d at 265-66.

Here, the State initially charged Lukone with first-degree murder, an off-grid person felony. In accordance with Lukone's plea agreement, the State amended Lukone's murder charge to second-degree reckless murder, a severity level 2 person felony. See K.S.A. 2017 Supp. 21-5403(a)(2), (b)(2). Under his plea agreement, Lukone agreed to serve a minimum term of 123 months' imprisonment, which was the aggravated presumptive sentence for his second-degree murder conviction under the KSGA grid. As a result, the trial court departed a total of 99 months from Lukone's agreed-upon minimum sentence of 123 months' imprisonment when it granted Lukone a downward departure to a controlling term of 24 months' imprisonment. So, the sentence Lukone received was less than a sentence that someone with an identical criminal history would receive for committing a severity level 5 person felony. See K.S.A. 2017 Supp. 21-6804(a).

Thus, the trial court's downward durational departure to a controlling term of 24 months' imprisonment totally ignores the gravity and the intentional conduct of Lukone in committing these crimes. For example, the State, in its brief, points out that this was a revenge killing. Also, the killing was intentionally committed. Indeed, Maxey, who was a passenger in Lukone's car when Lukone crashed his car into Lopez' bicycle, stated that

13

Lukone told him just before he ran over Lopez that Lopez had hit his mother. Maxey stated that Lukone then made a U-turn with his car and rapidly drove towards Lopez. Maxey further stated that Lukone increased his car's acceleration as he drove towards Lopez. He then stated that Lukone swerved his car into Lopez. And the force of the collision was so great that it cracked the passenger's window on Maxey's side of the car.

The extent of the trial court's departure was not proportionate to the severity level of Lukone's crimes. As a result, the trial court's 99-month departure was outside the framework of the legal standards and statutory limitations placed on it by the KSGA grid. Thus, this constituted an abuse of discretion.

Anger that leads a person to murder someone in revenge is not condoned under the KSGA. And anger unrestrained, like the murder in this case, is required to be punished according to the grid under the KSGA. So, we vacate the durational departure sentence in this reckless second-degree murder conviction and remand to the trial court for resentencing.

Sentence vacated and case remanded for resentencing.