NOT DESIGNATED FOR PUBLICATION

No. 126,975

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

AUSTIN LEE HESS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; ERICA K. SCHOENIG, judge. Submitted without oral argument. Opinion filed April 18, 2025. Reversed and remanded with directions.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, for appellant.

*Catherine A. Zigtema*, of Zigtema Law Office LC, of Shawnee, for appellee.

Before BRUNS, P.J., SCHROEDER and CLINE, JJ.

CLINE, J.: The State appeals the district court's decision to grant Austin Lee Hess a dispositional departure to probation instead of a presumptive prison sentence for his criminal threat conviction. We hold the district court's findings on the factors it used to justify its departure are not supported by substantial competent evidence or adequate legal conclusions. And even if they were, none of them show Hess' case is so extraordinary that the district court was forced to abandon Hess' presumed prison sentence and grant probation. Thus the district court's decision to grant a departure was in

1

error. We therefore reverse the court's decision to grant Hess' departure motion and remand the case for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 19, 2021, the State filed a complaint in the case underlying this appeal, case number 21DV81, that charged Hess with unlawfully, knowingly, and intentionally violating a protection from abuse order. In the supporting affidavit, Seargeant Sean Couper described how Hess' ex-girlfriend, M.L., had contacted law enforcement to report that Hess had contacted her in violation of a no contact order.

M.L. advised law enforcement that Hess had begun calling her from an unknown caller ID number and threatening her and her new boyfriend. M.L. said Hess had threatened to snap her new boyfriend's neck. She showed law enforcement 66 missed and answered calls from an unknown caller ID. While speaking to law enforcement, M.L. received a call from an unknown caller ID. M.L. placed the call on speaker and identified the caller as Hess. Seargeant Couper reported that the calls continued and when M.L. answered again, officers heard Hess say he wanted to meet with M.L.'s new boyfriend. Hess asked M.L. when the police were going to arrive, and then said he was waiting. Officers had M.L. ask Hess what he was waiting with, but Hess would not answer.

The State later amended its complaint to dismiss this charge and add another charge—unlawfully and feloniously communicating a threat to commit violence with the intent to place another in fear, which is a severity level 9 person felony. Hess eventually entered into a plea agreement wherein he agreed to plead guilty to this amended charge. At his plea hearing Hess admitted the charge was based on an incident where he was talking to the couple's daughter, A.H., on a video call and he told M.L. he was going to kill her twice while on this call.

2

Before sentencing in case number 21DV81, Hess was implicated in other court cases. In January 2022, the State filed a petition in case number 22JC00043, alleging A.H. was a child in need of care (CINC). The district court issued an order prohibiting Hess from having any contact with A.H. The presentence investigation report in case 21DV81 also revealed Hess had seven charges of aggravated indecent liberties and four charges of indecent liberties with a child in a separate case, case number 22CR343. And in mid-2022, in case number 22CR1905, the State charged Hess with violating the protective order put in place in the CINC case. Hess purportedly sent A.H. flowers at school with a card that read "Happy sixth birthday, [A.H.] You are a big deal. I love you. Love, Dad." A detective indicated the investigation tied the flower delivery back to Hess. The State also charged Hess with committing offenses related to bad checks in another case, number 22CR1901.

While awaiting sentencing in case 21DV81, the State filed two motions. It first moved to revoke bond on July 12, 2022, based on the alleged bad checks and violation of a protection order. It then moved the district court to make a finding that a substantial change in circumstances occurred after the plea agreement and to release the State from that agreement. It alleged Hess violated his bond conditions by committing a new criminal offense after the plea agreement but before sentencing.

About a week before the State's motion to withdraw from the plea agreement, Hess moved for a dispositional departure in case 21DV81. Hess first contended "[t]he underlying facts caused less harm than is typical" for criminal threat. Hess contended he threatened harm to M.L's current partner, not M.L., so the "threat was not made to the actual person the threat was directed towards." Hess also said he and M.L. "were in a highly toxic and volatile break-up and custody battle," so Hess believed a dispositional departure was warranted. Hess further argued the bad checks case stemmed from a record keeping oversight, he had not been found guilty of the charge, and most of the crimes still

3

pending before the court predated the allegations in case 21CV81. Hess also noted that he was gainfully self-employed which assisted him with caring for his multiple children.

On September 8, 2023, the district court held a sentencing, probation revocation, and motion to reinstate hearing on case numbers 21DV81, 20DV1229, and 20DV1345. At the hearing, the State presented testimony from M.L. and a detective who investigated M.L.'s allegation that A.H. had received flowers at school from Hess. The State also pointed out a judge in another case had signed a warrant after finding probable cause to believe Hess had violated his bond supervision conditions.

After hearing the evidence, the district court granted the State's motion to be relieved from its plea agreement. It then turned to sentencing and Hess' motion for dispositional departure. It found Hess' criminal history score was B, and his criminal threat charge was a severity level 9 person felony. It noted that based upon Hess' criminal history, his sentence was presumptive prison with a range of 15 months for an aggravated sentence, a standard sentence of 14 months, and a mitigated sentence of 13 months.

The State asked the district court to impose the presumptive prison sentence at 14 months because there were not any substantial and compelling reasons to depart. Among other reasons, the State pointed out that, when looking at Hess' criminal history, this was not his first criminal threat case and he had several protection from abuse violation cases.

Before taking up Hess' departure motion, the district court sentenced him to 15 months in prison. It then addressed the State's motion to revoke Hess' probation in cases 20DV1229 and 20DV1345. Hess stipulated to violating his probation by committing the new crime to which he pled guilty in case 21DV81 (the criminal threat) but did not stipulate to committing the other crimes alleged in the affidavits filed in support of the State's motion to revoke his probation. Hess' probation officer and the State recommended that Hess' probation be revoked and his underlying prison sentence be

4

imposed based on the felony conviction to which Hess pled guilty in case 21DV81 and the allegations of other criminal law violations which were still pending.

The district court reinstated Hess' probation but ordered him to serve 60 days in jail as "shock time." It also ordered he was eligible for work release while in custody on that sentence. And it granted Hess' motion for a dispositional departure to probation, sentencing him to 12 months. The court found it "notable" that the State was aware of Hess' criminal history when it entered the plea agreement in case 21DV81 and it pointed out the most serious charges occurred before that agreement. It also found that in the CINC case, it was aware Hess and M.L. "had a significant conflictual coparenting relationship" and it was not just Hess "that got them to CINC court according to the petition." Hess, according to the court, "has been very compliant with House Arrest and his bond conditions." "[B]esides" Hess' conviction in case 21DV81, the court determined "it sounds like he has been compliant on his probation and definitely on his bond." It also viewed "the degree of harm" in Hess' criminal threat conviction as "significantly less than it would be in other criminal threat cases."

The district court warned Hess that even though it was granting his motion for dispositional departure, it was "hesita[nt]" placing Hess on probation because of his "very significant criminal history" which was B—"the second highest criminal history under the law." It noted Hess was convicted in 2009 for violating a protective order, violating no-contact orders in cases 20DV1229 and 20DV1345, and was accused of violating the no-contact order in the CINC case. The court told Hess, "[Y]our ability to show you can follow courts is questionable." But on balance, it believed Hess was "amenable to probation."

After the State asked the district court to summarize the substantial and compelling reasons for departure, the court stated:

5

"Harm is less than it is in other criminal threat cases, defendant has been on bond for many, many months and has been compliant with the bond conditions and his probation but for committing the new law violations. The community will be better served by him remaining gainfully employed instead of being incarcerated, and additionally his children will benefit from him being able to continue to remain gainfully employed, and the community will be better served by him being granted a shot at probation than being incarcerated. He has proven that he can follow court rules and conditions of probation."

The State appealed the district court's decision to grant Hess' motion for a dispositional departure.

## REVIEW OF THE STATE'S APPELLATE CHALLENGES

I. *Does this court have jurisdiction over this appeal?*

A. *Standard of review*

Interpretation of a statute is a question of law subject to unlimited review. *State v. Skolaut*, 286 Kan. 219, 227, 182 P.3d 1231 (2008). Similarly, the issue of appellate jurisdiction is a question of law over which we have de novo review. *Sander v. State*, 278 Kan. 487, 490, 102 P.3d 1136 (2004).

B. *We find Hess' jurisdictional arguments unpersuasive.*

Hess contends we lack jurisdiction to hear this appeal. K.S.A. 21-6820(c)(2) provides that this court shall not review "any sentence resulting from an agreement between the state and the defendant which the sentencing court approves on the record." While he is correct that the parties entered into a plea agreement, the district court found the State was not bound by it.

Hess nevertheless argues: "[I]f the district court imposes the sentence contemplated by the agreement, even when the State is relieved of its requirement to perform under the agreement, this Court is deprived of jurisdiction by the legislature under the language of the statute."

>1. *The district court's sentence was not imposed because of the plea agreement.*

Hess first maintains that under K.S.A. 21-6820(c)(2), we cannot review the district court's sentence because the court approved the sentence set forth in his plea agreement. The pertinent statutory provision states that in a case "[o]n appeal from a judgment of conviction entered for a felony committed on or after July 1, 1993, the appellate court shall not review . . . any sentence resulting from an agreement between the state and the defendant which the sentencing court approves on the record." K.S.A. 21-6820(c)(2).

The Kansas Supreme Court has provided direction on how to interpret statutes:

> "The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. In ascertaining this intent, we begin with the plain language of the statute, giving common words their ordinary meaning. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. But if a statute's language is ambiguous, we will consult our canons of construction to resolve the ambiguity. [Citations omitted.]" *Johnson v. U.S. Food Service*, 312 Kan. 597, 600-01, 478 P.3d 776 (2021).

Hess contends that "if a conviction is obtained by plea agreement which specifies a disposition, whether followed by the court or not, the sentence was imposed as a result of an agreement."

7

We do not read K.S.A. 21-6820(c)(2) as expansively as Hess does. Hess' interpretation would deprive this court of jurisdiction over *any* sentence imposed after the parties reached a plea agreement—regardless of whether the sentence was consistent with the agreement. That would contradict the statute's plain language and evident intent to preclude appeals from agreed-upon sentences imposed for felony convictions.

K.S.A. 21-6820(c)(2) requires the district court to approve the agreement on the record, which it did not do here. Although the court later granted Hess a dispositional departure, the court did not approve of this disposition through the plea agreement. Rather, the court stated that since the State was not bound by its plea agreement, there was no longer "an agreed dispositional departure" between the State and Hess. Although the court ultimately granted Hess' departure motion, the State did not agree to the sentence imposed by the court.

> 2. *Even if the State sought to be released from a specific provision of the plea agreement, that provision concerned sentencing.*

Hess next argues the plea agreement still exists because "the State only sought to be released from specific performance of its existing recommendation at the time of sentencing" and therefore, "[t]he State must be bound by its decision to only seek to void a single provision and not the entire agreement." In the State's motion, it stated in its opening paragraph that it "respectfully requests that this Court find that a substantial change in circumstances has occurred subsequent to the plea agreement which serves to release the State from the written plea agreement." But in its final paragraph, the State asserted it "respectfully requests that the Court grant the State's motion and release the State from its obligation to recommend the sentence articulated in the written plea agreement." According to Hess, the plea agreement still existed at sentencing. He claims his sentencing resulted from that agreement since the court approved the sentence set forth in the agreement.

8

Even if we agreed with Hess that the State's request was ambiguous (in that he is claiming the State only asked to void a single provision and not the whole agreement), his argument is unpersuasive because the provision the State requested to be relieved from was the sentencing recommendation. Since there was no agreed upon sentence between the State and Hess under K.S.A. 21-6820(c)(2), we do not find the court sentenced Hess in accordance with the parties' agreement.

3. *Hess did not cross-appeal the district court's decision to relieve the State of the plea agreement.*

In Hess' last jurisdictional argument, he claims the district court improperly relieved the State of its plea agreement obligations based on a legal error which the State did not correct. According to Hess, the State failed to apprise the district court of controlling caselaw that would have "answer[ed]" the question of "whether a conviction [i]s required to support a new law violation finding in order to excuse specific performance of a plea agreement."

When the district court was evaluating whether Hess committed legal violations in breach of the plea agreement, it found that in cases 22CR1901 (bad checks) and 22CR1905 (protective order), "there has at a minimum been a probable cause finding. Warrants were issued or the defendant was held in custody pending first appearance." The court found that there was "probable cause plus preponderance of the evidence" in those two cases because, "at some point a judge has made a probable cause finding after reviewing the affidavits. So that is essentially equivalent to what's required in a [*sic*] probation revocations when you have a new law violation." Although the court found Hess had not been convicted in those cases, it ultimately ruled that based on the cases arising after the plea was entered, the State's motion for a court to find a substantial change in circumstances should be sustained.

9

On appeal, Hess points to *State v. Callaway*, No. 88,850, 2003 WL 21947602 (Kan. App. 2003) (unpublished opinion), which he maintains "held that unadjudicated allegations c[annot] form a basis for relief from the plea agreement without sufficient evidence of the violation." Since the State did not inform the court of this caselaw, Hess claims the State acted in bad faith and "should not benefit from its bad faith dealing to avoid specific performance" of the plea agreement.

Even assuming Hess is correct that the district court based its decision to relieve the State from its obligations under the plea agreement on a legal error, the State properly points out that Hess did not cross-appeal that adverse ruling by the district court. "[B]efore an appellee may present adverse rulings to an appellate court, the appellee must file a cross-appeal. If an appellee does not file a cross-appeal, the issue is not properly before the appellate court and may not be considered." *Chesbro v. Board of Douglas County Comm'rs*, 39 Kan. App. 2d 954, 969, 186 P.3d 829 (2008) (citing *Cooke v. Gillespie*, 285 Kan. 748, 755, 176 P.3d 144 [2008]). Hess did not file a cross-appeal to challenge the district court's decision to relieve the State of its plea obligations. While Hess notes we can affirm the district court's decision "for any reason," we cannot base our decision on an issue resolved below adversely to Hess which Hess should have cross-appealed.

We also disagree that the State acted in bad faith. Hess claims that when the district court asked the State if it was aware of caselaw that addressed whether a conviction was required to support a finding that a defendant had violated a plea agreement conditioned on no new law violations before sentencing, the State should have mentioned *Callaway*. Even if we agreed with Hess' contention that *Callaway* sets the standard that high, the State told the court it would need to look at the caselaw because it did not want to give the court the wrong information. And it offered to brief the issue. We do not find this response to constitute bad-faith dealing.

10

For these reasons, we find Hess has failed to persuade us we lack jurisdiction to consider the State's appeal.

II. *Is this appeal moot because Hess served his probation sentence?*

After briefing was completed, we issued a show cause order for the parties to explain why this case should not be dismissed as moot since it appeared that Hess had served his probationary sentence. Hess responded that he had no objection to dismissal of the appeal for mootness and noted that he "completed his probation and discharged his sentence." The State contended the appeal is not moot. It noted that Hess had no expectation of finality in his probationary sentence since the State appealed within two weeks of sentencing, promptly docketed its appeal, and filed its brief in February 2024. It pointed out that Hess requested several briefing extensions and even unsuccessfully sought a stay of briefing, noting he filed his responsive brief on July 25, 2024. The State also noted the district court terminated Hess' probation early on August 8, 2024, over the State's objection.

The State contends this appeal is not moot because its requested relief—ordering Hess to serve his presumptive prison sentence—can still be granted, whereas that is not the case when a defendant appeals a prison sentence and argues they should have been given probation. In the situation where a defendant appeals a sentence which they feel should have been lighter (either in type or length), the defendant cannot be given back time they already served once the heavier sentence is completed. We have generally held those appeals moot because we cannot grant the defendant the relief sought. We recognize the distinction between the two situations and find the State's logic persuasive.

And this distinction is why the dissent's position that the appeal is moot falls short. To hold otherwise would eviscerate the State's ability to appeal departure decisions. A party has a right to their day in court and an appeal should only be dismissed if it would

11

not impact any of the parties' rights. *State v. Roat*, 311 Kan. 581, 591-92, 466 P.3d 439 (2020). We still have the ability to grant the State the relief it seeks and so we decline to find the State's appeal is moot.

But even if we agreed the appeal is moot, "the mootness doctrine is merely a court policy and not an absolute bar to deciding an issue." *State v. Kurtz*, 51 Kan. App. 2d 50, 52, 340 P.3d 509 (2014). We have recognized exceptions, including where the case raises issues that are capable of repetition and present concerns of public importance. 51 Kan. App. 2d at 52. The situation here is capable of repetition any time a district court grants a departure motion and sentences a defendant to a relatively short probationary term. And ensuring sentences comply with statutory requirements is an important public concern—one which the State is seeking to enforce here. Therefore we would find it prudent to address this appeal under this exception even if it were moot (although we do not find that it is).

While it may seem a harsh result to order a defendant to potentially serve a prison sentence after he has served a probationary one, this is not the first time our court has faced such a situation and found it legally dictated. As the State points out, in *State v. Franklin*, No. 122,651, 2021 WL 1826258 (Kan. App. 2021) (unpublished opinion), the State appealed a decision granting a defendant's motion to correct his sentence. The district court had corrected the defendant's sentence to shorten it from 272 months in prison to 120 months and then released the defendant since he had already served 120 months in prison. The State appealed and we reversed the district court's decision after finding the original sentence was legal. The district court then ordered the defendant back into the custody of KDOC to serve out the remainder of his 272 month sentence. The defendant appealed, arguing in part that he should not be resentenced because his 120-month term was completed. But we disagreed, finding the defendant had no expectation in the finality of his 120-month sentence due to the State's timely appeal. 2021 WL 1826258 at *4. Similarly, Hess had no expectation in the finality of his probationary

12

sentence since the State timely pursued and perfected its appeal. This also means the dissent's characterization of a resentencing as a double jeopardy violation is misplaced. As our Supreme Court emphasized in *State v. Lehman*, 308 Kan. 1089, 427 P.3d 840 (2018), any double jeopardy analysis must include whether the defendant had a legitimate expectation of finality in his original sentence. *State v. Smith*, 65 Kan. App. 2d 19, 28-29, 556 P.3d 926 (2024) (citing *Lehman*, 308 Kan. at 1094). And we find Hess did not.

We therefore find that the State has the right to appeal from the district court's erroneous granting of probation in a presumptive prison case. Moreover, we find that the State's right to appeal is not extinguished simply because the defendant's probationary sentence was terminated early while a timely appeal was pending.

III. *Did the district court err in granting Hess' dispositional departure motion?*

The State challenges the district court's decision to grant Hess a dispositional departure to probation. Appellate review is limited to determining whether the sentencing court's findings of fact and reasons justifying a departure are supported by the evidence and constitute substantial and compelling reasons to depart. K.S.A. 21-6820(d); *State v. Montgomery*, 314 Kan. 33, 36, 494 P.3d 147 (2021). K.S.A. 21-6815(c)(1) contains a nonexclusive list of mitigating factors a sentencing court may consider in determining whether substantial and compelling reasons for a departure exist. *State v. Morley*, 312 Kan. 702, 711, 479 P.3d 928 (2021).

In *Morley*, the Kansas Supreme Court clarified the standard of review for departure decisions that rely on nonstatutory factors. It concluded an appellate court should review a district court's decision as to whether a mitigating factor constitutes a substantial and compelling reason to depart using an abuse of discretion standard of review. 312 Kan. at 708, 711. In this context, we are to look at: (1) whether the determination of a nonstatutory factor was guided by an erroneous legal conclusion;

(2) whether substantial competent evidence supported the factual finding that the factor existed, i.e., was there an error of fact; and (3) whether a reasonable person would have taken the view adopted by the sentencing court. Only the first step involves a legal question, subject to unlimited review. 312 Kan. at 711.

A. *The district court abused its discretion in granting Hess' departure motion.*

The State takes issue with the three reasons the district court articulated as the basis for its decision:  Hess' harm was less than what is typical, Hess' compliance with bond and probation conditions, and the community and Hess' children would be better served by Hess serving probation. Hess points out four other reasons the district court granted his motion:  the prior plea agreement of the parties, there was a mutually high conflict relationship of the parties and that served as context for the offense, Hess complied with bond and house arrest for nearly two years, and the high box consecutive underlying sentences should serve as motivation for Hess to complete probation. But while the court mentioned these facts in talking to Hess about his sentence, when the State asked the district court to clarify what factors it relied on, for the record, the court only responded with the three factors the State discusses on appeal:

> "Harm is less than it is in other criminal threat cases, defendant has been on bond for many, many months and has been compliant with the bond conditions and his probation but for committing the new law violations. The community will be better served by him remaining gainfully employed instead of being incarcerated, and additionally his children will benefit from him being able to continue to remain gainfully employed, and the community will be better served by him being granted a shot at probation than being incarcerated. He has proven that he can follow court rules and conditions of probation."

And in the journal entry of judgment, the district court confirmed that its decision to grant Hess' departure motion was for three reasons:  "Would better serve community and

14

defendant's children for defendant to be out of custody, defendant in substantial compliance with probation, harm less than the norm in a criminal threat."

None of the additional factors Hess mentions are statutory mitigating factors nor were they stated by the court when it was asked what factors it relied on to make its decision. We therefore cannot consider them as a basis for its decision. K.S.A. 21-6815(c).

Moreover, the district court did not state whether the three factors it relied on to grant Hess' departure motion were independently sufficient to grant the motion. An appellate court will review a decision to depart "based on that nonstatutory factor by *itself or collectively* with other statutory or nonstatutory factors cited by the sentencing court." (Emphasis added.) *Morley*, 312 Kan. at 711. We will therefore examine each of these factors individually then collectively to determine whether they provide sufficient basis to "force[] the court" to abandon a presumptive sentence. See *State v. Blackmon*, 285 Kan. 719, 724, 176 P.3d 160 (2008).

1. *Degree of harm or loss*

The district court found the "[h]arm is less than it is in other criminal threat cases," and relied on this finding to support Hess' dispositional departure to probation from presumptive prison. This is the only statutory factor on which the court relied. K.S.A. 21-6815(c)(1)(E) states a district court can consider that "[t]he degree of harm or loss attributed to the current crime of conviction was significantly less than typical for such an offense" as a mitigating factor to determine whether substantial and compelling reasons for a departure exist. Thus the court's consideration of this factor was legally appropriate. See *Morley*, 312 Kan. at 711.

The State posits two reasons why the district court's finding that the harm in this case was less than typical in a criminal threat case is unsupported by evidence in the record. K.S.A. 21-6820(d)(1). First, it claims the district court never explained what it believed to be the typical harm in a criminal case. And second, it contends the court did not explain how the facts here show harm or loss that is significantly less than that baseline.

The State is correct that the district court failed to explain what harm is typical in criminal threat cases. And it is improper for a district court to depart from a presumptive sentence when the record is silent about the typical harm that results from the type of offense and where there is no showing that the harm is less significant than in a normal case. *State v. Haney*, 34 Kan. App. 2d 232, 243, 116 P.3d 747 (2005); *State v. Gonzalez*, No. 121,142, 2020 WL 3579777, at *3 (Kan. App. 2020) (unpublished opinion); see also *State v. Minor*, 268 Kan. 292, 312, 997 P.2d 648 (2000) (The court "specifically disapproved" of relying on this statutory factor when there were "no statements or evidence as to what is 'typical for such an offense' and no showing as to how the facts in this case make the 'degree of harm or loss . . . significantly less.'"). Hess recognizes this deficiency but nevertheless argues there is evidence in the record that would support the conclusion that the harm was less than typical. Not only does the record fail to support Hess' contention but Hess still does not address the threshold problem of the district court's failure to provide any context against which to measure its finding. As we explained in *Gonzalez*, a departure based on this factor must be based on evidence of the typical harm and evidence to show that the harm to the victim in the case at issue was less than the harm to a victim in a typical case. 2020 WL 3579777, at *3.

Hess claims the district court considered the context of the parties' relationship in determining typical harm. He points out the parties' protracted litigation history and custody battle and implies such behavior was commonplace between the two. While it is true that the court referenced this litigious history as the basis for its finding, it made only

16

conclusory statements and provided no details or evidence to support it. For example, the court mentioned it read the petition in the CINC case and noted "it is not all Mr. Hess that got them to CINC court according to the petition," but did not explain why the CINC case allegations established a baseline which normalized Hess' threats to kill M.L. or meant the harm from those threats was less than the typical harm in criminal threat cases. Admittedly, the CINC petition contains a statement that the parents have a history of domestic violence and describes one such incident where both parties acted violently (which it noted was unsubstantiated). But most of the petition describes abusive actions by Hess (which it describes as substantiated), including alleged sexual abuse by Hess of his other children. We fail to see how the CINC petition allegations provide evidence either of the typical harm in criminal threat cases or how the harm to M.L. here was less than typical. That is, just because it may have been typical for Hess to engage in abusive behavior, according to the CINC petition, does not mean the harm from his criminal threats to M.L. was less than typical. And relying on past allegations of domestic violence to find a current instance is typical seems to normalize rather than discourage criminal behavior.

The district court also vaguely commented that the couple "ha[s] had years of conflict and issues related to their minor child," but, again, provided no specifics as to why a protracted custody battle would make a parent's twice-repeated threat to kill the other parent—in front of their child—less harmful than a typical criminal threat situation or establish the baseline of harm in those cases. And, last, when the State asked the court to clarify its reasons for the departure, the only explanation it provided for this factor was "the history of these two individuals fighting over their child for many years." But the court cited no evidence to support this statement.

These vague comments provide neither context nor sufficient detail to support the court's finding. While it is true that the court made conclusory comments that Hess' harm was less typical than others, there is nothing in the record to show the harm suffered by

17

M.L. was less significant than the harm normally associated with a criminal threat. *Haney*, 34 Kan. App. 2d at 243. The court, for instance, did not state that in typical criminal threat cases, the relationship between the defendant and victim is not strained nor did the court provide any specifics about the parties' relationship other than to note it was contentious. This is important because the court provided no context to frame its analysis or finding.

Hess contends "[t]here is also the implicit degree of harm from typical conduct inherent in the sentencing guidelines." According to him, because "[a] level 9 criminal threat offense conduct is presumptive probation for all but the highest levels of criminal history," the typical harm caused by "criminal threat conduct" does not "warrant incarceration on its own." Since criminal threat typically results in probation, Hess believes "the substantive degree of lesser harm does not need to be drastic in comparison to granting departure for a higher level offense."

This argument, however, is unconvincing. *Haney* and *Minor* direct us to look at "statements" and "evidence" that show what harm is typical for an offense. *Haney*, 34 Kan. App. 2d at 243; *Minor*, 268 Kan. at 312. Since the record must express what the typical harm is for a particular type of offense, an implicit argument is unpersuasive. *Haney*, 34 Kan. App. 2d at 243. And this argument asks us to inconsistently apply the factors in K.S.A. 21-6815 depending on the nature of the crime, which has no statutory basis and conflicts with one of the recognized goals of the Revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-6801 et seq., which is to standardize sentences. See *State v. Favela*, 259 Kan. 215, 233-34, 911 P.2d 792 (1996).

When an appellate court is reviewing a district court's application of this factor, there should be "wording in the trial court's findings or written reasons that can be relied upon to uphold application of this statutory provision." *State v. Sampsel*, 268 Kan. 264, 281, 997 P.2d 664 (2000). Given that the district court provided insufficient context and

detail as to why this harm was less than typical, we find the record does not support the court's finding that the harm caused here by Hess was less than typical.

But even if we determine that the district court's findings or written reasons show it made a ruling on what harm is typical in criminal threat cases, we fail to see how the fact that the parties had engaged in a long custody battle means Hess' threat was less severe than typical. And the State provides a few case illustrations which buttress this point. One of these cases is *State v. McFarland*, 60 Kan. App. 2d 1, 2, 485 P.3d 178 (2021). In *McFarland*, this court found that when a defendant posted on social media that he was going to kill his former wife, that was sufficient evidence for a criminal threat conviction even though the message was relayed to her by a stranger who saw the post. 60 Kan. App. 2d at 2. Here, Hess admitted he twice told M.L. he was going to kill her over a video chat. Similarly, in *State v. Woolverton*, 284 Kan. 59, 60-61, 159 P.3d 985 (2007), Woolverton and the mother of his child were fighting over parenting time. Wolverton told the mother over the phone: "'I will fucking kill you.'" 284 Kan. at 60-61. His conviction for criminal threat was upheld. 284 Kan. at 73. The facts of *Woolverton* also reveal that the defendant and the mother had a contentious relationship as demonstrated by mutual name-calling and the mother's threat to the defendant "that he would never see his child again." 284 Kan. at 60-61.

Given that a criminal threat of killing someone, communicated over the phone, has occurred often enough to lead to a conviction in at least two appellate cases, it is hard to imagine how the harm here was less than typical for a criminal threat charge. And *Woolverton* shows that criminal threat cases do happen between parties with contentious relationships—meaning this type of relationship is not necessarily a mitigating factor.

A district court must find substantial and compelling reasons to depart from a presumptive prison sentence. A compelling reason is one that "forces the court, by the facts of the case, to abandon the status quo and to venture beyond the sentence that it

19

would ordinarily impose." *Blackmon*, 285 Kan. at 724. The facts here do not provide a compelling reason to depart, and we therefore find the district court's conclusion that Hess' harm was less than typical was unreasonable and an abuse of discretion.

### 2. *Substantial compliance with bond and probation*

The district court also found that Hess "has been on bond for many, many months and has been compliant with the bond conditions and his probation but for committing the new law violations." The State first points out "partial" compliance with bond is not a departure factor under K.S.A. 21-6815(c). This is true. But under *Morley*, sentencing courts can consider factors not set forth by statute so long as they are consistent with the principles of the KSGA. *Montgomery*, 314 Kan. at 38. See K.S.A. 21-6815(c). The legislative purpose of the KSGA is to reduce prison overcrowding, protect public safety, and standardize sentences. See *Favela*, 259 Kan. at 233-34. And amenability to bond and probation seems to promote these goals. If an individual proves to be amenable to bond and probation because they have been successful on bond and probation, then granting them a dispositional departure to probation would reduce prison overcrowding. Indeed, *State v. Carriker*, No. 114,655, 2017 WL 2021411, at *6 (Kan. App 2017) (unpublished opinion), found: "While a showing of amenability to probation is not a departure factor expressly stated in the statute, a sentencing court may properly consider this factor as a legitimate reason to impose a dispositional departure sentence." We agree with the analysis in *Carriker* and find this consideration can be a mitigating factor relied on by a sentencing court as a matter of law.

The State argues the record does not support the district court's conclusion that Hess complied with the conditions of his bond and probation. And it is correct that Hess did not fully comply with those conditions because the court recognized that Hess committed new law violations when he issued bad checks (case 22CR1901) and violated a protective order by contacting his daughter (case 22CR1905). It determined that in

20

those cases, "there has at a minimum been a probable cause finding. Warrants were issued or the defendant was held in custody pending first appearance."

So the question then becomes whether complying with all terms of probation or bond except the term prohibiting new law violations means Hess substantially complied with his probation terms. The State argues that since a compelling reason to depart is one that "forces the court, by the facts of the case, to abandon the status quo and to venture beyond the sentence that it would ordinarily impose," the court acted unreasonably because the bond violations should not "force" the court to abandon Hess' presumptive sentence. *Blackmon*, 285 Kan. at 724. Hess, on the other hand, believes that because there were no new violations for the 14 months immediately preceding sentencing, that should show he can comply with supervision.

There is no doubt Hess' ability to avoid committing a bond or probation violation (absent the two new law violations) before sentencing in this case is commendable, although it should be expected. It should carry weight with the district court that Hess largely complied with his bond and probation conditions. But despite Hess doing so, it is difficult to imagine how only partially complying with bond and probation conditions is a compelling reason to depart from a presumptive sentence. The record does not show Hess had an exemplary record with bond and probation violations. The same court found two new law violations during Hess' time on bond and probation. Failing to comply with the law (on more than one occasion) is a serious violation which outweighs compliance with conditions like reporting and maintaining employment, particularly when viewed against Hess' criminal history of violating protective and no-contact orders. Such a significantly unsuccessful effort to complete bond and probation terms does not justify abandoning a presumptive sentence. See *Blackmon*, 285 Kan. at 724 (A compelling reason to depart from a presumptive sentence must be one which forces the court to abandon the status quo and to venture beyond the sentence that it would ordinarily impose.).

21

Hess nevertheless takes issue with the fact that the two law violations, at the time of sentencing, had not resulted in convictions. He states: "This Court has previously found the use of conduct that has not resulted in a conviction cannot support an upward departure because it violates the presumption of innocence." And he relies on *State v. Hawes*, 22 Kan. App. 2d 837, 923 P.2d 1064 (1996), to support this statement. Hess, however, takes *Hawes*' reasoning out of context. In that case, this court stated: "Departure cannot be based on *prior uncharged activity*; it violates the presumption of innocence. Even if a person admits to prior criminal activity, that admission is not equivalent to a guilty plea or a conviction. [Citations omitted.]" 22 Kan. App. 2d at 841. The two new law violations in this case were charged and a bench warrant was issued. See *State v. Inkelaar*, 38 Kan. App. 2d 312, 315, 164 P.3d 844 (2007) ("[A]n eventual criminal conviction for the act which violated the condition of probation is not required to support an order revoking probation.").

Regardless of whether Hess committed what he considers comparatively minor violations like issuing bad checks or violating a protective order by sending flowers, he did not fully comply with his bond and probation. If Hess was fully compliant with bond and probation conditions, then that might be a circumstance where the court reasonably felt compelled and forced to abandon Hess' presumptive sentence. See *Blackmon*, 285 Kan. at 724. That is not what happened here. Hess continues to struggle with compliance with the law and court orders which prohibit contact with his family members.

We conclude that when a defendant has committed new crimes while on bond or probation, compliance with the remainder of the terms of their bond or probation is not sufficient to justify departure from a presumptive sentence. This is especially true when, like here, at least one of the defendant's new crimes is similar in character to the defendant's past violations of the law. Departing under these circumstances contradicts rather than promotes the goals of the Kansas Sentencing Guidelines, which are designed to, among other goals, protect public safety and standardize sentences. Those guidelines

22

take a defendant's criminal behavior and recidivism into account when formulating a sentence, which the district court did not do here.

### 3. *Community interests are better served by probation.*

The district court found: "The community will be better served by him remaining gainfully employed instead of being incarcerated, and additionally his children will benefit from him being able to continue to remain gainfully employed, and the community will be better served by him being granted a shot at probation than being incarcerated."

To begin, the State argues the record does not support this factor. It points out the court's finding was based on Hess' counsel's statement to the district court "that a departure to probation would allow him to remain employed and thus in a position to pay his child support obligations." Defense counsel also told the court, "I would tell you that public policy, Judge, in this case given the sheer number of children that he has and his ability to pay child support is an important consideration for the Court. He obtained a Work Release assessment which says he's a viable candidate for their probation." The State believes that since Hess did not tell the court this himself under oath, the district court's factual finding on this factor is not supported by substantial competent evidence. See *Morley*, 312 Kan. at 711 (noting the second factor is reviewed for substantial competent evidence).

The State cites *In re K.B.*, 48 Kan. App. 2d 155, 161, 285 P.3d 389 (2012), to support the argument that "unsworn statements alone do not rise to the level of substantial competent evidence in support of a factual finding." *In re K.B.* discussed how this court has held previously that "'victims' unsworn statements alone cannot constitute substantial competent evidence for a trial court to rule that a defendant has committed a sexually motivated crime.'" 48 Kan. App. 2d at 161. But the issue here is not whether an

23

unsworn statement can support a beyond-a-reasonable-doubt standard of proof for conviction of a crime. Rather, the question is if counsel's statement is substantial competent evidence to support the finding that Hess would better serve the community as an employed person. Hess responds that K.S.A. 21-6815(d) permits the court to consider "'written briefs and oral arguments of either the state or counsel for the defendant'" to determine aggravating and mitigating circumstances.

We find that Hess' counsel's statements are substantial competent evidence. This court defines substantial competent evidence as possessing "both relevance and substance. It furnishes a substantial basis of fact from which the issues can reasonably be resolved. Moreover, substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. [Citation omitted.]" *In re J.M.E.*, 38 Kan. App. 2d 229, 232, 162 P.3d 835 (2007). Hess' counsel's statement is relevant to whether the community would be better served with Hess on probation because it suggests that more likely than not, if Hess stays on probation, he will be able to pay child support. It also contains substance because a reasonable person could accept this statement as support for the proposition that Hess needs to work to pay support for his children. Since the district court may rely on a defendant's counsel's statement under K.S.A. 21-6815(d), we find substantial competent evidence supports the court's conclusion that the community would be better served if Hess was on probation.

Even though Hess' counsel's statement furnishes substantial competent evidence that the community would be better served with Hess on probation, we still must examine whether it is a substantial and compelling reason to depart from a presumptive sentence. And Hess admits that this issue alone cannot be a mitigating factor. But he cites *State v. Hill*, No. 117,288, 2017 WL 4321288, at *4 (Kan. App. 2017) (unpublished opinion), to show that this factor can be an appropriate consideration if it is paired with other proper factors.

In *Hill*, this court reviewed a district court's decision which found "it would be in the community's best interest for Hill to be granted a departure." 2017 WL 4321288, at *4. The district court heard evidence from Hill's wife testifying that he "had gotten a job, was assuming his parental role for his child, and was a good father and a productive member of his family and community when he is not on drugs." 2017 WL 4321288, at *4. It decided it "was willing to give Hill this one opportunity to make himself a productive member of the community." 2017 WL 4321288, at *4. Even though the State argued "Hill repeatedly violated the law and consistently abused drugs as well as people in the community such that it would not be in the best interest of the community to grant him probation," the district court "measured it against the recent advances Hill had made in his relations with his family and the community." 2017 WL 4321288, at *4. On appeal, this court affirmed the district court's decision, but noted that considering the community's best interest as a mitigating factor could support a departure sentence "if *combined* with other mitigating factors." (Emphasis added.) 2017 WL 4321288, at *4.

In *State v. Theurer*, 50 Kan. App. 2d 1203, 1209, 337 P.3d 725 (2014), the district court found, among many other mitigating factors, that "Theurer 'has also developed an extensive network of professionals and academics who believe that society would benefit from a departure from the sentencing guidelines [in this case].'" On appeal, this court found that "the fact that a defendant has the potential to be of great benefit to society is not a statutory mitigating factor justifying a departure sentence. Moreover, we know of no caselaw wherein such a reason was found by a Kansas appellate court to be a nonstatutory mitigating factor." 50 Kan. App. 2d at 1223. It then found:

> "There is nothing in the statutory language of the [KSGA] which suggests that a criminal defendant who is an exceptional person based on a potential to benefit society merits a finding of mitigation. Moreover, the use of this factor is inconsistent with the intent and principles of the sentencing guidelines. Indeed, the sentencing guidelines would mean little if the punishment did not fit the crime and similarly situated offenders were treated unequally because a sentencing court formulated a judicial calculus of each

25

criminal defendant's social usefulness. If this factor was considered, wide sentencing disparities would obviously result among defendants of greater or lesser talents, social and economic status, and personality traits. Accordingly, we hold that a sentencing court's finding that a defendant is an exceptional person with the potential to provide a great benefit to society is not a substantial and compelling reason to grant a departure sentence under the [KSGA]." 50 Kan. App. 2d at 1223-24.

Although the district court here did not make a finding that Hess is an exceptional person, it did find society would be better benefited from him being on probation because he could "remain[] gainfully employed instead of being incarcerated, and additionally his children will benefit from him being able to continue to remain gainfully employed."

Like *Theurer*, it would not be aligned with the KSGA to mitigate Hess' sentence based on a finding that he is more "social[ly] useful[]" to the community if he worked to support his children. 50 Kan. App. 2d at 1224. While this concept is no doubt true, as the State points out, it is too ubiquitous to be considered a substantial and compelling reason to depart from a presumptive sentence. That is, every defendant could serve their community better by working and supporting their children. The district court made no findings that Hess' situation is unique or more compelling than any other defendant who wishes to avoid incarceration so they can remain employed. We therefore cannot see that it is a substantial or compelling enough reason to force the district court to depart from the status quo, so we must give it little weight when considered collectively with the other two factors cited by the district court.

> 4. *Collectively, the district court's stated statutory and nonstatutory mitigating factors do not support a dispositional departure.*

The last question to answer is whether the district court's three reasons for why it granted a dispositional departure, collectively, could have forced the district court to venture beyond the statutory presumed sentence of imprisonment. *Morley*, 312 Kan. at

26

714-15. And given that one of the purposes of the KSGA is to ensure uniformity in sentencing, "'departures should only be allowed in extraordinary cases.'" *State v. Brown*, 305 Kan. 674, 697, 387 P.3d 835 (2017).

Hess' case is not so extraordinary that the district court was forced to abandon Hess' presumptive prison sentence and grant probation. And since the court made no findings on what typical harm is for criminal threat cases, it is challenging to balance the gravity of this factor (or potential lack thereof), with the two other factors the court considered. Regardless, since the harm Hess caused appears to be not all too different from other criminal threat appellate cases, this factor bears little weight in our collective analysis. See *Woolverton*, 284 Kan. 59; *McFarland*, 60 Kan. App. 2d 1.

Further, pairing Hess' partial compliance with bond and probation requirements with Hess' financial obligations to his children does not make this an extraordinary case. Although Hess argues on appeal that he strictly complied with bond and probation, the district court found probable cause by a preponderance of the evidence that Hess committed crimes concerning bad checks (case 22CR1901) and violated a protective order (case 22CR1905). Even if Hess complied with bond and probation otherwise, the court determined he committed two new law violations. And the fact that Hess had child support obligations, alone, is not an extraordinary circumstance either. In other cases where this factor carried weight, evidence was presented to the sentencing court that demonstrated the defendant had good character, family, and community support. For instance, in *Theurer*, this court recognized that evidence was presented to the sentencing court:

> "And, unlike many criminal defendants, based on the numerous character reference letters, he also has many friends and acquaintances in the community who are impressed with his academic achievements, speaking ability, and especially his potential to contribute to society in the field of agriculture. The sentencing judge relied on some of

27

these factors in finding that Theurer is 'an exceptional person that I find to be an atypical case.'" 50 Kan. App. 2d at 1242.

Simply because a defendant has financial obligations does not mean the district court should be "forced" to abandon presumptive imprisonment.

None of the factors the district court relied on to grant Hess a departure sentence are deeply persuasive individually nor do they collectively carry Hess over the high burden of showing his case warrants extraordinary circumstances.

This is a fact-intensive case that Hess characterizes as a close call. As he points out, the district court told him it was "hesita[nt]" to put him on probation. The court noted Hess has "a very significant criminal history." It told him, "[Y]ou have got to stop committing new crimes. I mean, you're a Criminal History B. That is the second highest criminal history under the law and your ability to—I have told you your ability to show you can follow courts is questionable."

If a sentencing court is hesitant to put a defendant on probation because of their criminal history and concern for committing new law violations while on bond and probation, then the defendant's case does not warrant substantial and compelling circumstances to depart from presumptive imprisonment.

We therefore find that independently or collectively, the three mitigating factors the district court relied on are not substantial and compelling reasons to depart from Hess' presumptive sentence of imprisonment.

Reversed and remanded for resentencing.

* * *

SCHROEDER, J., dissenting:  For the reasons explained below, I respectfully dissent from the majority opinion. Here, the district court properly applied the discretion the Revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-6801 et seq., provides for the district court to consider each individual case when determining what sentence to impose. See K.S.A. 21-6802(b). I believe Austin Lee Hess received a proper discretionary dispositional sentence to probation, which sentence he completed, and was released in August 2024.

We issued a show cause order for the parties to explain why this case should not be dismissed as moot. Hess had no objection to dismissal of the appeal based on mootness because he had successfully completed the probationary term of his sentence and been released. The State, relying on *State v. Franklin*, No. 122,651, 2021 WL 1826258 (Kan. App. 2021) (unpublished opinion), responded its timely notice of appeal placed Hess on notice he could have no expectation of finality in his probationary sentence, and it was entitled to relief in the form of a corrected sentence. Again, the sentence imposed was not an illegal sentence, and it has now been served. I agree with Hess that this appeal is moot with the successful conclusion of his term of probation.

"A case is moot when a court determines that '"it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights."'" *State v. Roat*, 311 Kan. 581, 584, 466 P.3d 439 (2020). Our Supreme Court explained:

> "The party asserting mootness generally bears the initial burden of establishing that a case is moot in the first instance. In an appeal solely challenging a sentence, the party asserting mootness may establish a prima facie showing of mootness by demonstrating that the defendant has fully completed the terms and conditions of his or her sentence. The burden then shifts to the party opposing the mootness challenge to show the existence of a substantial interest that would be impaired by dismissal or that an exception to the mootness doctrine applies. [Citations omitted.]" 311 Kan. at 593.

29

In *State v. Lehman*, 308 Kan. 1089, 1094, 427 P.3d 840 (2018), our Supreme Court stated: "[T]he United States Supreme Court has held that, when considering whether a subsequent increase in the severity of a criminal sentence constitutes a double jeopardy violation, the appropriate inquiry is whether the defendant had a legitimate expectation of finality in his or her sentence. *United States v. DiFrancesco*, 449 U.S. 117, 135-36, 101 S. Ct. 426, 66 L. Ed. 2d 328 (1980)."

In *Franklin*, another panel of this court interpreted *Lehman*, finding the State's appeal of a defendant's *illegal* sentence does not necessarily make the issue moot if the sentence was completed. The panel found: "Franklin had no expectation in the finality of his 120-month sentence" because "[h]e was on notice that the State appealed the district court's ruling and, as such, it was subject to reversal." *Franklin*, 2021 WL 1826285, at *4. That panel noted it may seem unfair for someone released from prison to return to prison to serve the remainder of his or her sentence. 2021 WL 1826285, at *4.

*Franklin* is distinguishable because it dealt with an illegal sentence. Here, the district court did not illegally sentence Hess but used its discretion provided by the KSGA to grant a dispositional departure to probation. Hess' sentence is not illegal because: (1) The district court had jurisdiction over the case, (2) a departure sentence is authorized by statute, and (3) the sentence pronounced from the bench was not ambiguous as to the time and manner in which it was to be served. See K.S.A. 22-3504(c)(1). Accordingly, I disagree with the majority's conclusion this case is not moot because, in my view, Hess received a legal sentence, completed the sentence, and any attempt to resentence him would increase his punishment and constitute a double-jeopardy violation. I believe Hess had an expectation of finality in his sentence when the district court terminated his probation and he was released. See K.S.A. 21-6608(a).

The question here is whether the district court abused its discretion—a case-specific analysis. I do not see a question turning on the specific facts of the case as

30

creating an ongoing interest in public policy. Moreover, I believe the majority is generally mistaken in its rationale, as the public policy of sentencing is within the province of the Legislature. Here, our Legislature recognizes the legality of a sentence is of no ongoing concern once served. See K.S.A. 22-3504(a) ("The court may correct an illegal sentence at any time *while the defendant is serving such sentence*." [Emphasis added.]).

Regardless of whether *Franklin* may be of any persuasive value, "we are not bound by the decision of a previous panel of our court." *State v. Fahnert*, 54 Kan. App. 2d 45, 56, 396 P.3d 723 (2017). And I would not apply *Franklin* as the majority has here.

It is undisputed Hess fully completed the legal sentence imposed by the district court upon the completion of his probationary term, establishing a prima facie showing of mootness. If remanded for a new sentence, the district court could reimpose the same dispositional departure sentence to probation for time served, given the additional factor that Hess has already successfully served his term of probation. The State has the burden of establishing an exception to the mootness doctrine by showing the existence of a substantial interest that would be impaired by dismissal of the case. *Roat*, 311 Kan. at 593. I do not believe the State met its burden by simply claiming it had an interest in correcting Hess' sentence, which, in my opinion, was correctly and legally imposed based on substantial and compelling reasons. I believe Hess had an expectation of finality when he completed his sentence of supervised probation and was released in August 2024. To find otherwise is both a moot point and an inequitable finding that goes against public policy.

The State also carries the burden to show the district court abused its discretion by granting Hess a departure sentence to probation. *State v. Keys*, 315 Kan. 690, 708, 510 P.3d 706 (2022). I do not believe the State has met that burden either. Our Supreme Court clarified that the standard of review in a sentencing departure is an abuse of discretion,

and the only legal question is whether a nonstatutory factor can be a mitigating factor. *State v. Morley*, 312 Kan. 702, 711, 479 P.3d 928 (2021). And "[s]ubstantial competent evidence does not require evidence to *prove* a fact; rather, it simply requires evidence to sufficiently *support* the fact finder's conclusion." 312 Kan. at 712. "Appellate courts do not consider other evidence that might support a different result so long as substantial competent evidence supports the district court's factual finding. Doing otherwise is an improper reweighing of evidence and reassessment of credibility." 312 Kan. at 713.

Here, Hess correctly shows at least one of the seven reasons he claims the district court relied on in granting his motion for dispositional departure to probation, if not more, support his departure sentence. The district court need only find one substantial and compelling reason to depart. *State v. McKay*, 271 Kan. 725, 729-30, 26 P.3d 58 (2001).

The district court explicitly listed three reasons for its departure to probation *after* the State asked for clarification on the ruling:

- The degree of harm was less than what is typical;
- Hess was compliant on probation and bond and followed most of the conditions;
- The community and Hess' children would be better served by Hess serving probation.

The district court also announced from the bench the following additional reasons—all factors the majority did not address:

- The State was aware of Hess' criminal history at the time it entered into the plea agreements with Hess to recommend probation at the time of sentencing;
- Hess and the victim had a mutually high-conflict relationship; and

32

- Hess had a substantial underlying sentence looming over him as motivation to succeed on probation.

Hess also claims the district court relied on his amenability to probation, though that does not appear to be a separate factor from the district court's reliance on Hess' substantial compliance with bond in this case and probation in other cases. However, we now know he was substantially compliant as he has successfully completed his term of probation and has been released. Appellate review of the district court's reasons for a departure sentence to probation is controlled by all of the oral pronouncements of the sentence from the bench. See *State v. Edwards*, 309 Kan. 830, 835, 440 P.3d 557 (2019). We are not limited to the portion of the district court's oral ruling from the bench in which it attempted to clarify the State's confusion; instead, we consider the entirety of the district court's ruling. The majority's perceived reliance on the sentencing journal entry is misplaced.

One of the factors the district court used was the statutory factor set out in K.S.A. 21-6815(c)(1)(E): "The degree of harm or loss attributed to the current crime of conviction was significantly less than typical for such an offense." Even if the district court failed to specifically state how the typical harm in this case was less, as the majority suggested, the court was acutely aware of the facts reflecting the high conflict issues that existed between the parties and considered that fact as support for its finding that less harm was caused than is typical. Cf. *State v. Johnson*, 310 Kan. 835, 843-44, 450 P.3d 790 (2019) (recognizing, in context of family's relationship, Johnson's threat to kill his mother could have been made with no intent for the threat to be taken literally).

The district court also found Hess substantially complied with his bond conditions for almost two years pending sentencing and found the community, including his multiple children, would be better served by Hess remaining gainfully employed. In fact, it appears Hess remained on bond for nearly the entire time the case was pending from

33

January 2021 through sentencing in September 2023. The State filed a motion to revoke Hess' bond in July 2022 for the bad check and violation of protection order and, even then, Hess was credited with only three days in jail before being released again on bond. The district court's decision to grant probation supports one of the primary purposes of the sentencing guidelines: to reserve prison space "for serious violent offenders who present a threat to public safety." *McKay*, 271 Kan. at 730. The district court's findings that Hess was better off supporting his children and could be properly supervised on probation is very different than a broad finding that a defendant is "an exceptional person" under *State v. Theurer*, 50 Kan. App. 2d 1203, 1223, 337 P.3d 725 (2014).

I believe the evidence sufficiently supported the district court's conclusion, and the majority has improperly reweighed the dispositional factors the district court relied upon. See *Morley*, 312 Kan. at 713. The majority even states: "Failing to comply with the law (on more than one occasion) is a serious violation which *outweighs* compliance with conditions like reporting and maintaining employment, particularly when viewed against Hess' criminal history of violating protective and no-contact orders." (Emphasis added.) (Slip op. at 21.) Here, the district court's reliance on Hess' substantial compliance with probation—being able to maintain employment and report as directed—ties in with its reliance on the fact Hess was better off supporting his children and could be properly supervised on probation. The majority ignores the relationship between these factors based on its improper reweighing of the significance of the ways in which Hess succeeded on bond. Further, the district court's departure to probation advances several objectives of the KSGA, including the reduction of prison space, which should be reserved for serious and violent offenders, and that incarceration should be reserved for offenders who represent a threat to society. See *McKay*, 271 Kan. at 730. In granting the departure, the district court expressed its concerns with placing Hess on probation but ultimately considered probation as a one chance opportunity in which Hess has ultimately proved himself successful.

I find the State's appeal of the district court's decision granting Hess a dispositional departure to probation is moot given Hess' successful completion of his term of probation. Any opinion we offer would be an improper advisory opinion. See *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 898, 179 P.3d 366 (2008). I conclude with the common saying, "What's good for the goose is good for the gander." If Hess had received the 15-month sentence requested by the State and appealed, raising only a claim of sentencing error, we would dismiss the appeal as moot, given the fact he would have served his sentence by now. Accordingly, I would dismiss the case as moot or, alternatively, find the district court had substantial and compelling reasons to depart to probation.